233 P.3d 891 (2010)
156 Wash.App. 230
STATE of Washington, Respondent,
v.
Daniel William LEWIS Jr., Appellant.
No. 38523-6-II.
Court of Appeals of Washington, Division 2.
March 2, 2010.
Publication Ordered and Amended June 2, 2010.
*892 Jodi R. Backlund, Manek R. Mistry, Backlund & Mistry, Olympia, WA, for Appellant.
Gerald R. Fuller, Grays Harbor Co. Pros. Ofc., Montesano, WA, for Respondent.
*893 HUNT, J.
¶ 1 Daniel Lewis appeals his first degree robbery conviction. He focuses on the lack of a jury instruction on self-defense, the trial court's refusal to instruct on a lesser included offense, prosecutorial misconduct in closing argument, and ineffective assistance of counsel. In his statement of additional grounds for review (SAG),[1] he argues ineffective assistance of counsel on other grounds; denial of his rights to compulsory process, to due process, to present a defense, and to a fair trial; and cumulative error.[2] We affirm.

FACTS

I. First Degree Robbery
¶ 2 On July 2, 2008, 69-year-old retired logger Thomas Crocker drove from his Raymond, Washington, residence to Aberdeen, planning to go to a casino. On the way, Crocker made some purchases at Walmart and put the receipt into his checkbook, which contained approximately $150 cash. Although he also carried a wallet, he used his checkbook specifically to store cash and receipts.
¶ 3 Later, Crocker encountered Andrea Flores outside the Crystal Steam Bath Apartments and went upstairs with her to the second floor. Daniel Lewis, an acquaintance of Flores, was loitering with two other people in the hallway outside Flores' apartment. Crocker and Flores went to the apartment of another acquaintance, Kimmie Obi, where they stayed for a short time, and then returned to Flores' apartment. Flores asked Crocker for $20 to "get these guys high so she could get them out of the hallway." Report of Proceedings (Oct. 14, 2008) at 11. Crocker gave Flores $20, she left, he remained in her apartment alone, and he did not see her again that day.
¶ 4 About 15 minutes later, Lewis came into Flores' apartment, borrowed a cigarette from Crocker, and left. Five minutes later, Lewis returned, borrowed another cigarette, and "blind sided" Crocker, punching him multiple times in the head and knocking him face-down onto a mattress on the floor. RP (Oct. 14, 2008) at 13. Lewis then "beat the crap out of [Crocker]," leaving his face and clothing spattered with blood. RP (Oct. 14, 2008) at 13. Crocker suffered a black eye, a bloody nose, and a swollen face. Demanding money, Lewis grabbed Crocker's wallet and checkbook from his pocket and approximately $150 in cash and threw the wallet and checkbook onto the bed. Lewis called himself "Chilly Willy," threatened the kill Crocker if he went to the police, and fled with the cash. RP (Oct. 14, 2008) at 31.
¶ 5 Crocker went directly to the Aberdeen police station and told Officer Robert Kegel that he had been attacked and robbed. Kegel observed Crocker's visible injuries, took Crocker's statement, and involved Officers Andy Snodgrass and Gary Sexton. When Crocker mentioned his attacker's nickname, "Chilly Willy," Snodgrass recognized it as a nickname for Lewis.
¶ 6 Having learned that they could find Lewis at the Pourhouse Tavern, the three officers left to arrest him. A search of Lewis incident to his arrest revealed Crocker's Walmart receipt; $113 cash; a single cigarette; and two folding knives, one of which displayed the engraving "Chilly" on the blade. RP (Oct. 14, 2008) at 44. Police later seized Lewis's tennis shoes and jeans, all of which bore dark red stains that later tested positive for blood.
¶ 7 Back at the police station, Snodgrass prepared a photo montage, which showed Lewis's photo among numerous booking photos of other individuals of similar age, race, and appearance. Within seconds of seeing the montage, Crocker positively identified Lewis as his attacker.

II. Procedure
¶ 8 The State charged Lewis with first degree robbery. Before the jury trial, the trial court granted the State's motion to exclude two pieces of evidence: (1) any reference *894 to the allegation that Flores might be a prostitute, and (2) any reference to Crocker's prior felony drug conviction. Lewis did not object.
¶ 9 During his trial testimony, Crocker described the attack and the robbery and twice denied that he used drugs. Defense counsel used neither denial to impeach Crocker with his excluded prior drug conviction.
¶ 10 Lewis testified that on July 2, 2008, (1) he had been at the Crystal Steam Bath Apartments with two friends, Dion Obi and Kimmie Obi, "waiting to get dope," RP (Oct. 14, 2008) at 77; (2) he had seen Flores retire to her room with Crocker, leave shortly after, and come to where he (Lewis) was waiting; (3) Flores handed him a doubly folded $20 bill and asked if he and his companions "could get some dope," RP (Oct. 14, 2008) at 79; (4) when he returned from making a phone call, Flores told him that Crocker "was being aaggressive towards her in a manner that she didn't like" and asked "if [Lewis] could have [Crocker] leave," RP (Oct. 14, 2008) at 79; (5) he (Lewis) went to Flores' apartment and told Crocker that "he wasn't wanted there and he needed to leave," RP (Oct. 14, 2008) at 80, at which point Crocker became aggressive and "came at [Lewis] physically", RP (Oct. 14, 2008) at 80, "swinging on [Lewis]," RP (Oct. 14, 2008) at 88; and (6) Lewis "ended up defending [him]self." RP (Oct. 14, 2008) at 80.
¶ 11 Lewis denied having taken anything from Crocker. Lewis claimed that his mother had given him $150, of which $113 remained when he was arrested. When asked how he came to have Crocker's Walmart receipt, Lewis replied, "The only way that I know that I could have got it is through [Flores] when she handed me the [folded $20 bill]." RP (Oct. 14, 2008) at 91. Lewis denied having threatened to kill Crocker if he talked to the police and denied having identified himself to Crocker as "Chilly Willy." Lewis did acknowledge, however, that he sometimes used this nickname. But according to Lewis, Crocker had learned the nickname when Flores greeted Lewis using the nickname "Chilly Willy." RP (Oct. 14, 2008) at 89.
¶ 12 The State could not locate Flores, and she did not testify at trial. Despite having testified that he had injured Crocker in self-defense, Lewis did not request a self-defense jury instruction; nor did the trial court give one.
¶ 13 In closing, Lewis's defense counsel argued that Crocker was not telling the truth, as illustrated by the following excerpt:
You know, we're just not getting the whole story from Mr. Crocker about what happened that day. And I'm going to pointed [sic] out a few reasons why I think that he's just nothas not come into this courtroom and told you the truth.
RP (Oct. 14, 2008) at 103.
¶ 14 In rebuttal, the State argued:
[Defense counsel for Lewis] has told you in so many words that Mr. Crocker is lying about what happened, that he made this whole thing up apparently about the robbery, that he went down to the police station to tell some of the police that he had been robbed. You know, [Crocker] could have said, I have been beat up. But no, he told the truth about what happened, that he had been beaten up and robbed and that his money and his wallet and his checkbook had been rifled through, his money had been taken.
RP (Oct. 14, 2008) at 106-07. The State also argued that the jury should weigh Crocker's credibility against Lewis's credibility, suggesting questions they could ask themselves:
Do you believe that Mr. Crocker isn't telling you the whole story or do you believe that the defendant is fudging on the story? Do you believe that Mr. Crocker took a swing or do you believe that the defendant beat him up to take the money and the wallet?
RP (Oct. 14, 2008) at 107. Lewis neither objected to the prosecutor's argument nor requested a curative instruction.
¶ 15 The jury found Lewis guilty of first degree robbery. Lewis appeals.

ANALYSIS

I. Pretrial Exclusion of Testimony
¶ 16 Lewis argues that by excluding testimony that Flores worked as a prostitute, the *895 trial court "violated [his] right to present a defense and denied him a fair trial." SAG at 25. He also contends that his defense counsel rendered ineffective assistance in failing to object to such exclusion. We disagree.
¶ 17 First, with respect to the trial court's exclusion of this evidence, Lewis's counsel affirmatively stated, "I am not sure what the relevance is. So, ... I am not opposed to any order at this point." RP (Oct. 13, 2908) at 12. Lewis's express acquiescence constitutes invited error, which precludes his challenging the exclusion for the first time on appeal, even if constitutional rights are involved. State v. Phelps, 113 Wash.App. 347, 353, 57 P.3d 624 (2002); State v. Henderson, 114 Wash.2d 867, 871, 792 P.2d 514 (1990) ("Even where constitutional issues are involved, invited error precludes judicial review.").
¶ 18 Second, Lewis contends that "[h]ad [he] been able to testify that Crocker gave his money to Flores for sex, his defense of lawful force and self-defense may have made sense to the jury." SAG at 33. But defense counsel's acquiescence in the pretrial exclusion did not constitute deficient performance because whether Flores worked as a prostitute was not relevant to the facts of the robbery.[3] As we note in the next section of this analysis, lawful force and self-defense are not defenses to robbery. Lewis does not show prejudice from exclusion of irrelevant evidence. Therefore, he fails to show that we was denied a fair trial.

II. Self-defense Jury Instruction
¶ 19 Lewis next argues the trial court erred in failing to instruct the jury on self-defense. This argument fails.
¶ 20 Citing an opinion from Division Three of this court, Lewis contends that (1) his raising self-defense in his testimony required the State to prove the absence of self-defense beyond a reasonable doubt as an element of the charged offense, and (2) the trial court improperly relieved the State of this burdenan error of constitutional magnitude.[4]State v. Woods, 138 Wash.App. 191, 198-99, 156 P.3d 309 (2007). Addressing the merits of Lewis's argument, we note that Woods does not apply here because Woods involved an assault conviction, not a robbery conviction, which has significantly different elements. Because the crime of assault involves an element of intent,[5] "proof of self-defense may negate an element of the crime," namely this intent element. State v. Acosta, 101 Wash.2d 612, 615, 683 P.2d 1069 (1984).
*896 ¶ 21 The crime of robbery, on the other hand, includes no element of intent to inflict bodily injury; rather, it includes actual infliction of bodily injury as an element. RCW 9A.56.200(1)(a)(iii).[6] Proof of self-defense, therefore, fails to negate a corresponding intent element of the crime of robbery. Accordingly, despite Lewis's testimony that he hit Crocker in self-defense, Washington law does not impose on the State a burden to prove the absence of self-defense under the facts here.

III. Prosecutorial Misconduct
¶ 22 Lewis also argues that the State committed prosecutorial misconduct during closing argument by expressing a personal opinion that Crocker told the truth and shifting the burden of proof. These arguments fail.
¶ 23 Because Lewis did not object at trial, he asserts that he may raise this issue for the first time on appeal because (1) the error was manifest and affected a constitutional right, namely, his right to a fair trial and the proper allocation of the burden of proof; and (2) the prosecutor's conduct was "so flagrant and ill-intentioned," Br. of App. at 20, that no curative instruction would have negated its prejudicial effect. Accepting that the alleged error potentially affected a constitutional right,[7] we focus on the "manifest" portion of the first prong and on the second prong of the test for overcoming Lewis's procedural default. To this end, we note that he bears the burden of establishing both the impropriety and prejudicial effect of the prosecutor's comments; to establish prejudice, he must demonstrate a substantial likelihood that the misconduct affected the jury's verdict. State v. Brown, 132 Wash.2d 529, 561, 940 P.2d 546 (1997).
¶ 24 Lewis first argues that the prosecutor committed misconduct by vouching for Crocker's credibility in rebuttal closing argument. Although it is improper for a prosecutor to vouch for a witness's credibility,[8] a prosecutor has wide latitude in closing argument to draw reasonable inferences from the evidence and may freely comment on witness credibility based on the evidence. State v. Gregory, 158 Wash.2d 759, 860, 147 P.3d 1201 (2006). This is especially so where, as here, the prosecutor is rebutting an issue the defendant raised in his closing argument. State v. Jones, 71 Wash.App. 798, 809, 863 P.2d 85 (1993).[9] Thus, closing argument does not constitute improper vouching unless it is clear that the prosecutor is not arguing an inference from the evidence, but instead is expressing a personal opinion about credibility. State v. Warren, 165 Wash.2d 17, 30, 195 P.3d 940 (2008), cert. denied, ___ U.S. ___, 129 S.Ct. 2007, 173 L.Ed.2d 1102 (2009). Such is not the case here.
¶ 25 In Warren, the prosecutor argued that (1) certain details about which the complaining witness testified were a "badge of truth" and had "ring of truth," and (2) specific parts of the witness's testimony "rang out clearly with truth in it." 165 Wash.2d at 30, *897 195 P.3d 940. Our Supreme Court held that this argument was proper because it was based on the evidence presented at trial rather than on personal opinion. Warren, 165 Wash.2d at 30, 195 P.3d 940. Here, as in Warren, the prosecutor argued that Crocker's testimony was credible based on specific details to which he testified at trial; as in Warren, the prosecutor argued an inference, not a personal opinion. Therefore, the State's argument was not misconduct.
¶ 26 Citing State v. Fleming, 83 Wash.App. 209, 921 P.2d 1076 (1996),[10] Lewis further argues that the prosecutor committed misconduct by suggesting that in order to acquit, the jury had to find that Crocker lied under oath and that Lewis told the truth, thereby impermissibly shifting the burden of proof from the State to Lewis. Lewis points to the following excerpt from the State's closing argument:
Do you believe that Mr. Crocker isn't telling you the whole story or do you believe that the defendant is fudging on the story? Do you believe that Mr. Crocker took a swing or do you believe that the defendant beat him up to take the money and the wallet?
RP (Oct. 14, 2008) at 107. The prosecutor in Fleming, however, had argued that in order to acquit,
[the jury] would have to find either that [the complaining witness] has lied about what occurred ... or that she was confused..., misstat[ing] the law and misrepresent[ing] both the role of the jury and the burden of proof.
Fleming, 83 Wash.App. at 213, 921 P.2d 1076. Here, the prosecutor did no such thing; rather, he asked the jury to decide whom they believed. Merely asking questions of the jury does not rise to the level of misstating the law or misrepresenting the role of the jury and the burden of proof as in Fleming. The prosecutor here did not misrepresent the role of the jury, the burden of proof, or the law. We hold, therefore, that the prosecutor's closing argument here was neither misconduct nor flagrant and ill-intentioned.

IV. Effective Assistance of Counsel
¶ 27 Lewis argues that trial counsel rendered ineffective assistance of counsel, citing several instances in his appellate brief and in his SAG. Each argument fails.

A. Standard of Review
¶ 28 To prove ineffective assistance of counsel, Lewis must show that (1) counsel's performance was deficient, and (2) this deficient performance prejudiced him. State v. Hendrickson, 129 Wash.2d 61, 77, 917 P.2d 563 (1996); State v. Thomas, 109 Wash.2d 222, 225-26, 743 P.2d 816 (1987). Counsel's performance is deficient when it falls below an objective standard of reasonableness. State v. Stenson, 132 Wash.2d 668, 705, 940 P.2d 1239 (1997). "Prejudice occurs when, but for the deficient performance, there is a reasonable probability that the outcome would have differed." State v. Powell, 150 Wash.App. 139, 153, 206 P.3d 703 (2009).
¶ 29 We give great judicial deference to trial counsel's performance and begin our analysis with a strong presumption that counsel was effective. Strickland v. Washington, 466 U.S. 668, 689, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); State v. McFarland, 127 Wash.2d 322, 335, 899 P.2d 1251 (1995). "`Deficient performance is not shown by matters that go to trial strategy or tactics.'" State v. Cienfuegos, 144 Wash.2d 222, 227, 25 P.3d 1011 (2001) (quoting State v. Hendrickson, 129 Wash.2d 61, 77-78, 917 P.2d 563 (1996)).

B. Failure To Object to Pretrial Exclusion
¶ 30 Lewis argues defense counsel rendered ineffective assistance by failing to object to the pretrial exclusion. Having already held that this exclusion was proper, we hold that defense counsel's failure to object was not deficient performance.

*898 C. Failure To Impeach Crocker with Excluded Conviction
¶ 31 Lewis argues that defense counsel rendered ineffective assistance by failing to impeach Crocker with his prior felony drug conviction. In spite of the exclusion of this evidence, Lewis contends Crocker opened the door during the following cross-examination:
[DEFENSE COUNSEL]: ... Were youwere you [at the Crystal Steam Bath Apartments] to buy drugs?
[CROCKER]: No, I wasn't. I don't do drugs.
RP (Oct. 14, 2008) at 21.
[DEFENSE COUNSEL]: You say you don't do drugs?
[CROCKER]: I don't use drugs.
RP (Oct. 14, 2008) at 32.
¶ 32 We need not reach the question of whether Crocker's testimony, adduced by Lewis on cross-examination, "opened the door" to Crocker's prior drug conviction because Lewis cannot show the second prong of his ineffective assistance challengeprejudice. The record does not support Lewis's contention that evidence of Crocker's prior conviction would have "severely undermined [Crocker's] credibility, given his claims that he was not there to buy drugs and did not use drugs." Br. of Appellant at 28. The record on appeal provides no information about the circumstances of Crocker's prior conviction, and we cannot speculate that its admission would have substantially affected his credibility. Crocker's testimony that he does not "do" or "use drugs,"[11] referred to the present time, whereas his conviction occurred in the past.[12] Thus, Lewis fails to establish ineffective assistance on this ground.

D. Pretrial Investigation, Defense Strategy, Evidence, and Material Witnesses
¶ 33 Lewis argues in his SAG that defense counsel rendered ineffective assistance by "fail[ing] to conduct an appropriate pretrial investigation, fail[ing] to investigate and determine what legitimate defense [sic] were available, and fail[ing] to subpoena and secure necessary evidence and material witnesses." SAG at 14. We do not consider these arguments because the record fails to reflect what these witnesses would have said if subpoenaed or what such evidence would have shown if obtained. RAP 9.2(b).
¶ 34 Lewis further argues in his SAG (1) that the trial court violated his rights "to the compulsory process and due process," SAG at 18, by failing to secure the presence of Flores, Dion Obi, Kimmie Obi, and Lewis's mother Catherine Brooks; and (2) that defense counsel rendered ineffective assistance by failing to ask the trial court for material witness warrants for Flores, Dion Obi, and Kimmie Obi. These arguments also fail.
¶ 35 First, the record neither suggests that Lewis requested subpoenas for Flores, Dion Obi, Kimmie Obi, or Catherine Brooks, nor does it show that the trial court denied any such request. Thus, Lewis does not demonstrate a violation of his rights to compulsory process and to due process. Second, because the record shows no basis for material witness warrants, defense counsel's conduct was not deficient in failing to request such warrants. Moreover, as we note above, there is no evidence in the record as to what Flores, Dion Obi, and Kimmie Obi would have said if subpoenaed and, therefore, we must assume that trial counsel had legitimate strategic or tactical reasons for not employing such evidence.
¶ 36 Lewis next argues in his SAG that (1) defense counsel denied him effective representation by "presenting a defense strategy/theory the law did not recognize for one charged with robbery in the first degree," SAG at 39, namely, "lawful force and self-defense"; and (2) that such deficient performance "rendered the adversarial process in this case meaningless depriving [Lewis] of a fair trial." SAG at 40. We do not consider this argument because the record does not *899 show that defense counsel employed such a theory at trial. RAP 9.2(b). On the contrary, the self-defense claim came solely from Lewis's own testimony. And to the extent that Lewis argues ineffective representation because defense counsel acted deficiently by "fail[ing] to present a legitimate defense," SAG at 41, Lewis offers no legitimate defenses that counsel should have used.[13] Again, absent Lewis's making a contrary showing, we presume that defense counsel provided effective representation.

V. Cumulative Error
¶ 37 Finally, Lewis argues he is entitled to relief under the cumulative error doctrine. This argument also fails.
¶ 38 The cumulative error doctrine applies when several errors occurred at the trial court level to deny the defendant a fair trial, even though no single error alone warrants reversal. State v. Hodges, 118 Wash. App. 668, 673-74, 77 P.3d 375 (2003). As we have already held, the trial court committed no errors; nor did defense counsel render ineffective assistance. We hold, therefore, that Lewis has failed to show cumulative error warranting reversal of his conviction.
¶ 39 We affirm.
We concur: BRIDGEWATER, P.J., and QUINN-BRINTNALL, J.
NOTES
[1] RAP 10.10.
[2] In his Reply Brief, Lewis concedes that the evidence did not support an inferior degree instruction on second degree robbery. App. Br. at 4. Thus, we do not address the related argument he raised in his opening Appellant's Brief.
[3] Even if such evidence were relevant such that its exclusion was error, any error was harmless. The only money in question was the $20 that Crocker gave to Flores. Lewis admitted that Flores had given him the $20 (to explain his having Crocker's Walmart receipt on his person when apprehended). Lewis claimed that his mother had given him the $113 found on his person when apprehended; he did not testify that he received the $113 lawfully from Crocker, namely through Flores. Even if Lewis's defense had been that he had lawfully received the $113 from Crocker through Flores, he could have so testified without addressing whether Flores was a prostitute.
[4] Lewis did not request a self-defense jury instruction at trial. Nevertheless, he asserts that he may raise this issue for the first time on appeal because the error was manifest and affected a constitutional right. Alternatively, Lewis argues that defense counsel rendered ineffective assistance by failing to propose a self-defense instruction. We need not reach this alternative argument because Lewis concedes it serves merely as a back-up in the event we declined to address his self-defense argument based on his failure to preserve it for review.
[5] RCW 9A.36.031(1)(d) provides:

A person is guilty of assault in the third degree if he or she, under circumstances not amounting to assault in the first or second degree ... [w]ith criminal negligence, causes bodily harm to another person by means of a weapon or other instrument or thing likely to produce bodily harm.
(Emphasis added.) Former RCW 9A.08.010(1)(d) (2008) provides:
A person is criminally negligent or acts with criminal negligence when he fails to be aware of a substantial risk that a wrongful act may occur and his failure to be aware of such substantial risk constitutes a gross deviation from the standard of care that a reasonable man would exercise in the same situation.
"[B]ecause a person who acts in self-defense is not `fail[ing] to be aware of a substantial risk that a wrongful act' may occur, self-defense negates the requirement of a `wrongful act.'" State v. Dyson, 90 Wash.App. 433, 438, 952 P.2d 1097 (1997) (quoting RCW 9A.08.010(1)(d).)
[6] "A person is guilty of robbery in the first degree if ... [i]n the commission of a robbery or of immediate flight therefrom, he or she ... [i]nflicts bodily injury." RCW 9A.56.200(1)(a)(iii). See State v. Self, 42 Wash.App. 654, 713 P.2d 142, review denied, 105 Wash.2d 1017, 1986 WL 421129 (1986) (self-help to collect debt is not a defense to robbery absent a claim of ownership in the specific property acquired).
[7] Alternatively, Lewis argues that defense counsel rendered ineffective assistance by failing to object to these two instances of prosecutorial misconduct. Because Lewis concedes this argument serves as a backup in the event we rule he failed to preserve for review his prosecutorial misconduct claim, we need not reach it.
[8] State v. Horton, 116 Wash.App. 909, 921, 68 P.3d 1145 (2003).
[9] "Prosecutorial remarks that may otherwise be improper do not constitute grounds for reversal if they are made in reply to defense arguments, unless a curative instruction would not have cured them." Jones, 71 Wash.App. at 809, 863 P.2d 85 (citing State v. Swan, 114 Wash.2d 613, 663, 790 P.2d 610 (1990)). We further note that it is more difficult for Lewis to show that such argument was flagrant and ill-intentioned when the prosecutor made it only in rebuttal argument, after Lewis's counsel had, in closing argument, expressed his personal opinion that Crocker was not credible as follows: "I'm going to pointed [sic] out a few reasons why I think that he's just nothas not come into this courtroom and told you the truth." RP (Oct. 14, 2008) at 103.
[10] Division One of this court held: "[I]t is misconduct for a prosecutor to argue that in order to acquit a defendant, the jury must find that the State's witnesses are either lying or mistaken." Fleming, 83 Wash.App. at 213, 921 P.2d 1076.
[11] RP (Oct. 14, 2008) at 21; RP (Oct. 14, 2008) at 32.
[12] If, however, Crocker had testified that he had "never done drugs," our analysis might have differed.
[13] See Self, n. 6.