## IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 74027-0-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | |
| BRIAN MICHAEL JERUE, | ) | UNPUBLISHED |
| | ) | |
| Appellant. | ) | FILED: November 14, 2016 |
| | ) | |

Cox, J. — Brian Michael Jerue appeals his jury conviction of robbery in the second degree. He argues that insufficient evidence supports his conviction because the State failed to prove that he used or threatened to use force when stealing liquor from a store. He also contends that the trial court violated his constitutional right to confrontation by precluding him from cross-examining a witness about his violation of company policy prohibiting physical confrontation. We hold that there is sufficient evidence to support Jerue's conviction. We also hold that the trial court properly exercised its discretion by excluding irrelevant evidence of the witness's actions. We affirm.

On April 15, 2015, Mitchell Irons was working as a loss prevention officer at a Safeway store in Marysville. That night he observed a man, who was later identified as Brian Jerue, enter the store, walk to the liquor aisle, and take two bottles of whiskey. Irons watched the man walk out of the store without paying for the bottles. Irons was about twenty feet away when he followed Jerue out of the store through the south exit. When they were both outside, Irons confronted Jerue. He put both of his hands on the back of Jerue's shoulders, identified

1

himself as a loss prevention officer and "swung him around." Irons' employer has a company policy against physical contact with those being apprehended.

Jerue and Irons engaged in a physical confrontation that resulted in both of them ending up on the ground. Irons brought Jerue back inside the store, keeping his hand on Jerue's left shoulder. At least one of the two whiskey bottles had been left outside the store. Once inside, however, Jerue unzipped his jacket, slipping out of it and out of Irons' grasp. He ran through the store and out through the north exit. Irons followed him back to the south exit, where Jerue grabbled the smaller whiskey bottle and started running through the parking lot. Irons chased after him until the pair reached the southeast corner of the parking lot.

At that point Jerue turned around and raised the whiskey bottle over his head. He yelled at Irons, asking if Irons had ever been hit over the head with a bottle. Jerue also stated that he was a convicted felon and he wasn't afraid to hit Irons with the whiskey bottle.

Irons was scared that Jerue would hit him with the bottle if he continued to pursue him. He backed away and watched Jerue run out of the parking lot toward the street. Irons called 911 and provided the dispatcher with a description of Jerue.

Police located Jerue walking nearby and apprehended him. They found a bottle of whiskey in his possession that still had the Safeway security tag on it.

2

Jerue was charged with one count of second degree robbery and one count of third degree assault. Before trial, the State moved to exclude evidence that Irons violated his employer's company policy when he used physical contact to apprehend Jerue. The defense opposed the motion. It did so on the theory that Irons lied or exaggerated events when he told police that Jerue threatened him because he did not want to get in trouble for his own aggressive actions.

The trial court concluded Irons' violation of employee policy was not relevant because Irons never denied it. The court was willing to allow Jerue to revisit the issue depending on the results of Irons' defense interview.

The next day, Jerue argued that Irons admitted during his interview violating policy at least 5 to 10 times when trying to apprehend shoplifters, due to excitement and adrenaline. The trial court concluded that while Irons' prior incidents of aggressive contact could be analyzed under ER 404 as character evidence, the violation of policy had no relevance.

The jury found Jerue guilty on both charges. However, on double jeopardy grounds, the court sentenced Jerue solely on the conviction for second degree robbery. The trial court also found him to be indigent and appointed an attorney for this appeal.

Jerue appeals.

## EVIDENCE OF USE OR THREATENED USE OF FORCE

Jerue first argues that the evidence was insufficient to prove that he "used or threatened to use force or violence in committing the theft." We disagree.

3

Due process requires the State to prove all necessary facts of the crime charged beyond a reasonable doubt.[1] The test for determining the sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable doubt.[2] Upon reviewing a criminal case, all reasonable inferences from the evidence must be drawn in favor of the State and interpreted most strongly against the defendant.[3] Direct and circumstantial evidence are equally reliable; however "inferences based on circumstantial evidence must be reasonable and cannot be based on speculation."[4]

Robbery encompasses any "taking of . . . property [that is] attended with such circumstances of terror, or such threatening by menace, word or gesture as in common experience is likely to create an apprehension of danger and induce a man to part with property for the safety of his person."[5] Second degree robbery requires that the accused take personal property "from the person of another or in his or her presence against his or her will by the use or threatened use of immediate force, violence, or fear of injury to that person."[6] We use an objective test to determine whether "the defendant used intimidation" and "an ordinary

---

[1] State v. Colquitt, 133 Wn. App. 789, 796, 137 P.3d 892 (2006).
[2] State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992).
[3] Id.
[4] State v. Vasquez, 178 Wn.2d 1, 16, 309 P.3d 318 (2013).
[5] State v. Witherspoon, 180 Wn.2d 875, 884, 329 P.3d 888 (2014).
[6] RCW 9A.56.190.

4

person in the victim's position could reasonably infer a threat of bodily harm from the defendant's acts."[7]

RCW 9A.04.110(28) defines "threat" as it applies to robbery offenses. Under the statute, to "'[t]hreat[en]' means to communicate, directly or indirectly the intent" to take the applicable action.[8] In the robbery context, therefore, the "threatened use of immediate force, violence, or fear of injury" means a direct or indirect communication of the intent to use immediate force, violence, or cause injury.[9] A threat need not be explicit to qualify but may be implied by words or conduct.[10]

Here, it is undisputed that Jerue raised the bottle over his head and indicated that he "wasn't scared" to hit Irons in the head with it. Irons testified that he was afraid and that he "[a]bsolutely" felt like he would get hit if he continued to approach Jerue. An ordinary person in his position would likewise reasonably infer that Jerue threatened to use force. In addition, Jerue's statements that he was "not afraid to do it," and that he did not care about the consequences, because of his prior conviction, reinforced the seriousness of his threat.

Jerue argues that insufficient evidence supports the finding that he used or threatened to use force, violence, or the fear of injury to obtain the liquor. According to Jerue, there was no threat of violence or injury to Irons when he

---

[7] Witherspoon, 180 Wn.2d at 884.
[8] RCW 9A.04.110(28).
[9] State v. Shcherenkov, 146 Wn. App. 619, 624, 191 P.3d 99 (2008).
[10] State v. Farnsworth, 185 Wn.2d 768, 771, 374 P.3d 1152 (2016).

asked whether Irons had "ever been hit over the head with a bottle." In view of the undisputed evidence we just discussed, this argument is untenable.

Jerue argues that raising the bottle and asking Irons if he had ever been hit with a bottle before was not an implied threat because "he did not lunge toward him or otherwise act as if he were going to hit him." This is unpersuasive.

The classic example of a legitimate implied threat is brandishing a weapon.[11] Here, Jerue brandished the bottle over his head and implied his intent to use it to hit Irons if he continued his pursuit. Whether Jerue refrained from making additional physical advances toward Irons is of no consequence. "Any ... threat, no matter how slight, which induces an owner to part with his property is sufficient to sustain a robbery conviction."[12] Viewed in the light most favorable to the State, the evidence was sufficient to support the jury's finding that Jerue obtained store property through the use of or threatened use of "immediate force, violence, or fear of injury."

## RIGHT TO CONFRONTATION

Jerue next argues that the trial court violated his right to confrontation by excluding from his cross-examination of Irons the latter's violation of company policy regarding physical contact with those being apprehended. We hold there was no violation of his right to confrontation.

---

[11] Shcherenkov, 146 Wn. App. at 626 (citing State v. Demery, 144 Wn.2d 753, 755, 30 P.3d 1278 (2001)).
[12] State v. Handburgh, 119 Wn.2d 284, 293, 830 P.2d 641 (1992).

We review de novo constitutional claims, as questions of law.[13] A defendant has a constitutional right to present testimony in his defense and to confront and cross-examine adverse witnesses.[14] However, "the right to cross-examine adverse witnesses is not absolute."[15]

The confrontation right and associated cross-examination are limited by general considerations of relevance.[16] Relevant evidence is evidence that has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."[17] Relevant evidence is admissible unless otherwise prohibited; a defendant does not have a constitutional right to present irrelevant evidence.[18]

Generally, evidence of bias is relevant to a witness's credibility.[19] Where a case stands or falls on the jury's belief or disbelief of essentially one witness, that witness' credibility or motive must be subject to close scrutiny.[20]

Jerue argues that the evidence was at least minimally relevant to Iron's possible bias and motive to lie. He contends that Irons' credibility was central to the case because he was the only witness. According to Jerue, the jury was

---

[13] State v. Jones, 168 Wn.2d 713, 719, 230 P.3d 576 (2010).
[14] Washington v. Texas, 388 U.S. 14, 19, 23, 87 S. Ct. 1920, 18 L. Ed. 2d 1019 (1967), accord State v. Hudlow, 99 Wn.2d 1, 14-15, 659 P.2d 514 (1983).
[15] State v. Darden, 145 Wn.2d 612, 620, 41 P.3d 1189 (2002).
[16] Id. at 621 (citing ER 401, 403; Hudlow, 99 Wn.2d at 15).
[17] ER 401.
[18] ER 402; Hudlow, 99 Wn.2d at 15.
[19] State v. Lubers, 81 Wn. App. 614, 623, 915 P.2d 1157 (1996).
[20] State v. Wilder, 4 Wn. App. 850, 854, 486 P.2d 319 (1971); State v. Peterson, 2 Wn. App. 464, 466-67, 469 P.2d 980 (1970); State v. Tate, 2 Wn. App. 241, 247, 469 P.2d 999 (1970). See also State v. Wilson, 70 Wn.2d 638, 642-43, 424 P.2d 650 (1967).

entitled to consider whether Irons had exaggerated Jerue's use of force to justify his own aggressive actions and mitigate any consequences of violating his employer's policy.

The central question is whether Jerue used or threatened to use force, violence, or injury to person in his commission of the offense. Irons' admitted violation of company policy is not relevant to this question. This is particularly true because Jerue does not argue that he acted in self-defense.[21]

We also note that Irons admitted to violating the policy and the store manager witnessed the violation when she saw him "tackle" Jerue. So, the jury was aware of this information when deciding this case.

Finally, Jerue had other opportunities to cross-examine Irons and raise questions about his credibility. For example, Jerue's attorney questioned Irons about his failure to mention Jerue's threat to the 911 dispatcher as well as other discrepancies in Irons' testimony regarding the incident.

There was no violation of Jerue's right to confrontation.

## APPELLATE COSTS

Jerue argues that no costs should be imposed because the trial court found him to be indigent. We agree.

In State v. Sinclair,[22] this court recently determined that RAP 15.2(f) created a presumption of continued indigency throughout review. Unless a trial

---

[21] The State correctly points out self-defense is not available as a defense to robbery (State v. Lewis, 156 Wn. App. 230, 239, 233 P.3d 891 (2010), and that Jerue could have asserted self-defense as to the assault charge, but he chose not to.

[22] 192 Wn. App. 380, 393, 367 P.3d 612 (2016).

court finds that an indigent defendant's financial condition has improved, we presume that the defendant continues to be indigent.[23] Here, the trial court imposed only what it deemed to be mandatory legal financial obligations, finding that Jerue was "absolutely buried under financial obligations given his criminal history." The trial court also entered an Order of Indigency authorizing Jerue to seek review at public expense.

On this record, there is a presumption of continued indigency that the State has failed to overcome. The State argues that "[t]here is no reason in the record to presume [Jerue] will be unable to obtain employment when released" based on his age and his sentence length of 38 months. Jerue's financial declaration, however, shows that he was unemployed and receiving public assistance, with no financial assets and liabilities of around $10,000. We therefore exercise our discretion to deny appellate costs to the State.

We affirm the judgment and sentence. No appellate costs shall be awarded to the State.

Cox, J.

WE CONCUR:

Trickey, ACJ

---

[23] Id.