**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

**DIVISION II**

| | |
|---|---|
| STATE OF WASHINGTON, | No. 49053-6-II |
| Respondent, | UNPUBLISHED OPINION |
| v. | |
| SUSAN E. KRAMER, | |
| Appellant. | |

BJORGEN, C.J. — Susan Kramer appeals from her conviction of unlawful possession of a controlled substance, asserting that the prosecutor committed flagrant and ill-intentioned misconduct during closing argument by disparaging defense counsel and bolstering a witness's credibility.[1] We affirm.

FACTS

In the early morning hours of February 15, 2015, Dupont police officer Jordan Goss responded to a report of a suspicious vehicle at an apartment complex. Goss saw a minivan leaving a parking lot of a closed business near the apartment complex and conducted a traffic stop of the vehicle. Kramer was driving the vehicle, and a male passenger was lying on the floor between the front and second row seats. When asked to provide his identity, the male passenger gave Goss several false names and dates of birth. Eventually, police were able to determine the passenger's true identity and discovered that he had a felony escape warrant out of Utah. The passenger was arrested.

---

[1] Kramer also requests that we exercise our discretion to waive appellate fees in this matter. Because Kramer's current or likely future ability to pay appellate costs may be addressed by a commissioner of this court under RAP 14.2, we defer this matter to our commissioner in the event that the State files a cost bill and defendant objects.

Kramer told Goss that she owned the minivan, and she consented to a search of its contents. Goss began searching through a purse located on the backseat of the minivan, which was within reach of the driver. While conducting his search Goss asked Kramer whether the purse belonged to her; Kramer said, "[N]o." Report of Proceedings (RP) at 227. Inside a zipped pouch within the purse, Goss found a glass smoking pipe and a small baggy containing a substance later tested and confirmed to be methamphetamine.

Kramer was detained and informed of her *Miranda*[2] rights. Kramer then told police that the minivan belonged to the passenger, and she provided police with the passenger's true identity. The State charged Kramer with unlawful possession of a controlled substance, and the matter proceeded to jury trial.

During closing argument, defense counsel reminded the jury that they were the sole judges of witness credibility and argued that they should not regard Goss as a credible witness merely because he was police officer. Defense counsel argued that Goss was not credible based on his failure to document certain details of the traffic stop in his police report and based on his inadequate memory, which defense counsel referred to as "selective amnesia." Report of Proceedings (RP) at 452, 457-61, 467.

In rebuttal, the State argued as follows:

[Defense counsel] came up here and attacked the police officers. Why? Because during the course of this trial, ladies and gentlemen, what the State did for you was—this case is like a puzzle. What the State did, by putting on witnesses by making arguments, is to put puzzle pieces together so you can better see what happened in this case. When counsel came to do his closing argument and defense did his closing argument, they take apart that puzzle and throw it all over the courtroom and said, look, there is doubt.
    They want you to look at this case piece by piece, but not put the pieces together, but look at them individually and say, there is doubt. There is doubt. There is doubt. They talk to you about what police officers did, but say nothing

---

[2] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

about what the defendant did in this case. The lies. Why? Because they don't want to bring attention to those.

. . . .

Defense wants you to put yourself in the position of the officer and say, you should have done this. You should have done that. You should have done this. You should have done this. They don't talk about the fact that the officer followed protocol. Why? To confuse you. To take your attention away from Ms. Kramer, from her behavior, and to blame other people. It is clear, blaming the cop, sworn officer, blaming a passenger. None of this falls on the defendant, they said. She is innocent.

If [in] fact, they say that the officer had selective amnesia. Well, selective amnesia. I'm not a doctor, so I'm not questioning what that means, but the officer gets on the stand and takes the oath and says, this is what I remember. This is what I don't remember. The fact that he tells you "I don't remember," defense says you have selective amnesia. What is he to do? Make it up? Lie? He tells you, I don't know. They say, ahhhh, because you don't remember, you did something wrong.

RP at 469-71. The State again addressed Goss's credibility later in rebuttal, stating:

What does the officer have to gain or lose to tell you what he told you? Counsel says here, he doesn't deserve the trust because he is only being caught [sic] for two and a half years. This man has sworn an oath of office to protect and serve, gone through training, gone through field training, [has] now been trusted to be on his own. If anything, he has achieved quite a bit. The defense says, don't trust him. Don't trust the other officer. Just take apart . . . all of their testimony, find irrelevant information, such as, counsel says, when the other officer was reading Miranda rights—when Officer Feleppa was reading Miranda rights, [O]fficer Goss was nowhere near. I wasn't there. Counsel wasn't there. Officer Goss was. . . . How is that relevant? It is not unless you are trying to confuse someone, and that's what defense is trying to do. Confuse you to forget about everything that Ms. Kramer did do, such as lie continuously, possess the methamphetamine, and just concentrate on what everybody else did. Forget about what Ms. Kramer did. Now, that would be the defense.

RP at 476-77.

Defense counsel did not object to any of the above rebuttal argument. The jury returned a verdict finding Kramer guilty of unlawful possession of a controlled substance. Kramer appeals from her conviction.

ANALYSIS

Kramer asserts that the prosecutor committed misconduct necessitating reversal of her conviction by disparaging defense counsel and by improperly vouching for Goss's credibility. We disagree.

To establish prosecutorial misconduct, Kramer must prove that the prosecutor's remarks were both improper and prejudicial "in the context of the total argument, the issues in the case, the evidence, and the instructions given to the jury." *State v. Warren*, 165 Wn.2d 17, 28, 195 P.3d 940 (2008). Where, as here, a defendant did not object to the alleged misconduct at trial, she is deemed to have waived any error unless the misconduct was so flagrant and ill-intentioned that an instruction could not have cured the resulting prejudice. *State v. Emery*, 174 Wn.2d 741, 760-61, 278 P.3d 653 (2012). "Under this heightened standard, the defendant must show that (1) 'no curative instruction would have obviated any prejudicial effect on the jury' and (2) the misconduct resulted in prejudice that 'had a substantial likelihood of affecting the jury verdict.'" *Emery*, 174 Wn.2d at 761 (quoting *State v. Thorgerson*, 172 Wn.2d 438, 455, 258 P.3d 43 (2011)).

1. Impugning

Although a prosecutor may properly argue that the evidence at trial does not support the defense's theory of the case, "a prosecutor must not impugn the role or integrity of defense counsel." *State v. Lindsay*, 180 Wn.2d 423, 431-32, 326 P.3d 125 (2014). "Prosecutorial statements that malign defense counsel can severely damage an accused's opportunity to present his or her case and are therefore impermissible." *Lindsay*, 180 Wn.2d at 432.

We need not decide whether the prosecutor's statements improperly disparaged defense counsel, because Kramer does not show that they were such as to render an instruction

ineffective in curing the resulting prejudice. Therefore, Kramer cannot demonstrate prosecutorial misconduct on this ground.

2.      Vouching/Bolstering

It is improper for a prosecutor to vouch for a witness's credibility. *State v. Lewis*, 156 Wn. App. 230, 240, 233 P.3d 891 (2010). However, "a prosecutor has wide latitude in closing argument to draw reasonable inferences from the evidence and may freely comment on witness credibility based on the evidence." *Lewis*, 156 Wn. App. at 240. "Thus, closing argument does not constitute improper vouching unless it is clear that the prosecutor is not arguing an inference from the evidence, but instead is expressing a personal opinion about credibility." *Lewis*, 156 Wn. App. at 240.

Here Kramer does not identify, and we have not located, any specific comments made by the prosecutor that expressed a personal opinion about Goss's credibility during rebuttal argument. *Lewis*, 156 Wn. App. at 240. Instead, Kramer asserts that the prosecutor improperly bolstered Goss's credibility with facts outside the record when stating, "This man has sworn an oath of office to protect and serve, gone through training, gone through field training, [has] now been trusted to be on his own." RP at 476; Br. of Appellant at 9. Goss testified at trial regarding his training to become a police officer, and he testified that he was the only officer in the city of Dupont during the graveyard shift. Accordingly, the prosecutor's statement in regard to Goss's training and trust to be on his own were supported by the record. There was no evidence at trial, however, supporting the statement that Goss had sworn an oath to protect and serve. Assuming, however, that the prosecutor's brief mention of this oath was improper, any resulting prejudice could have been cured by an instruction had defense counsel lodged an objection. Therefore, we

5

hold that Kramer cannot demonstrate prosecutorial misconduct necessitating reversal of her conviction.  Accordingly, we affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

BJORGEN, C.J.

We concur:

MELNICK, J.

SUTTON, J.