# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 52231-4-II |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| DERRICK LEE LYONS, | |
| Appellant. | |

MAXA, C.J. – Derrick Lyons appeals his convictions for second degree burglary, attempted first degree theft, and attempted theft of a motor vehicle and the imposition of certain legal financial obligations (LFOs).

We hold that (1) the State produced sufficient evidence to support Lyons' convictions, (2) Lyons's prosecutorial misconduct claim fails because the prosecutor's statements were not improper, (3) the trial court did not err in admitting bolt cutters found in a pickup truck parked near the scene of the crimes or failing to sua sponte order a mistrial following dismissal of the charge for which the bolt cutters were relevant, (4) Lyons did not establish ineffective assistance of counsel based on the failure to move for a mistrial, and (5) the criminal filing fee imposed as an LFO and the interest accrual provision for nonrestitution LFOs must be stricken, but the DNA collection fee was properly imposed.

Accordingly, we affirm Lyons' convictions, but we remand for the trial court to strike the criminal filing fee and interest accrual provision for nonrestitution LFOs from the judgment and sentence.

FACTS

*Initial Incident*

On December 25, 2017 at approximately 6:00 A.M., Lewis County Sheriff's Special Services Chief Dustin Breen was patrolling Hamilton Road in Chehalis when he saw a small pickup truck with Oregon license plates parked at a turnout. Breen observed fresh tire tracks in the snow behind the vehicle, indicating that the vehicle had not been there long. After speaking with a woman in the passenger's seat, he believed that at least one other person was in the area. Breen left to check on nearby businesses.

Breen saw a person later identified as Donald Emery walking along the road. Emery was clothed, but was not wearing any shoes and was walking in the snow and slush in socks. Breen apprehended Emery, turned him over to a fellow officer, and began to track Emery's footprints. Breen eventually located a pair of shoes, coveralls, and a key fob behind a Conex container in the same area as a UPS vehicle. These items appeared to belong to Emery.

Other officers arrived on the scene and identified two sets of footprints going behind B&M Logging, a nearby business. Deputy Emmet Woods tracked the prints. Near the B&M building, Woods saw a person later identified as Lyons hiding in the brush. Lyons ran away after Woods announced himself, but Woods ultimately apprehended him. Lyons was wearing shoes, and had a torn black latex glove on one hand.

Deputy Jason Mauermann tracked the footprints in and around B&M. Mauermann identified prints consistent with Emery's and Lyons's shoes by a fire hydrant outside of the property, between some of the vehicles in front of the building, and near the back entrance. The back door to the building appeared to be damaged and slightly ajar. Mauermann saw Emery's

and Lyons's prints in close proximity to the door. He also identified Lyons's shoe prints inside the building.

Inside of B&M, a number of items had been moved. Two shop trucks and a forklift had been moved forward, and the key fob to one of the trucks had been removed. A large oxygen tank had been put in the back of one truck and a blue toolbox weighing approximately 2,000 pounds had been moved from one side of the building to the other. Other items had been placed in the back of the trucks, including power tools, grinders and a radio, CB radios, and a wire feed welder. These items had not been in the trucks the night before.

Breen also saw footprints outside the fence of another business, Dietrich Trucking. Mauermann identified a print outside the front window of Dietrich Trucking that he believed was consistent with Lyons's shoes. In addition, a lock at Dietrich Trucking had been cut.

Later, officers found Lyons's Oregon driver's license in the pickup truck parked near the scene of the crimes. In addition, on the driver's side floorboard officers found a rubber glove matching the one Lyons was wearing when he was apprehended. Finally, officers found a set of bolt cutters in the bed of the truck.

Regarding B&M, the State charged Lyons with second degree burglary (count I), attempted theft in the first degree (count II), and attempted theft of a motor vehicle (count III). Regarding Dietrich Trucking, the State charged Lyons with attempted second degree burglary (count IV).[1]

---

[1] The State also charged Emery with the same offenses. Before trial, the court severed Lyons's and Emery's cases.

*Trial*

At trial, Breen, Woods, and Mauermann testified to the facts stated above. The State also introduced Lyons's shoes into evidence, and Mauermann described distinct aspects of the tread that he used in tracking Lyons's footprints.

The owner of B&M, Brandon Smith testified about the items that had been moved. He observed that it would probably take a couple of people to move either the tank or the toolbox. He also testified that no one had permission to be on the property, go into building, or move the trucks.

The State offered for admission into evidence the bolt cutters found in the back of the pickup truck. Lyons objected because there was no nexus between the bolt cutters and the B&M charges and the foundation had not been laid for a connection between the bolt cutters and the Dietrich Trucking charge. The court overruled the objection, ruling that the bolt cutters were relevant. Lyons did not argue that the bolt cutters were inadmissible under ER 403 or ER 404(b).

After the close of evidence, the trial court granted Lyons's motion to dismiss count IV, the charge regarding Dietrich Trucking. Lyons did not move to strike evidence admitted only regarding count IV, request a limiting instruction to the jury, or move for a mistrial regarding the evidence admitted in support of that charge.

*Closing Argument*

During closing argument, the prosecutor argued that Lyons drove the pickup truck parked near the scene of the crime. The prosecutor stated, (1) "How did Mr. Lyons aid Mr. Emery? One, drove him there," 3 Report of Proceedings (RP) at 360; (2) Lyons was "right outside and he drove Mr. Emery there," 3 RP at 364; (3) "Mr. Lyons drove him there. The two of them drove

there together," 3 RP at 366; and (4) "We know Emery was there and we know [Lyons] drove him there," 3 RP at 367. The prosecutor also suggested that the truck was Lyons's truck.

The State did not make reference to the bolt cutters at any time during closing argument.

*Verdict and Sentencing*

The jury found Lyons guilty of second degree burglary, attempted first degree theft, and attempted theft of a motor vehicle. The trial court imposed three LFOs, including a $500 crime victim penalty assessment, $200 criminal filing fee, and $100 DNA collection fee. The judgment and sentence also provided that the financial obligations imposed would bear interest until paid in full. The court entered an order of indigence for purposes of Lyons's appeal.

Lyons appeals his convictions and the imposition of the criminal filing fee, DNA collection fee, and interest on LFOs.

ANALYSIS

A.    SUFFICIENCY OF THE EVIDENCE

Lyons argues that the State failed to produce sufficient evidence to prove that he committed the crimes of second degree burglary, attempted first degree theft, and attempted theft of a motor vehicle. We disagree.

1.    Standard of Review

The test for determining sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable doubt. *State v. Cardenas-Flores*, 189 Wn.2d 243, 265, 401 P.3d 19 (2017). In a sufficiency of the evidence claim, the defendant admits the truth of the evidence and the court views the evidence and all reasonable inferences drawn from that evidence in the light most favorable to the State. *Id*. at 265-66. Credibility determinations are made by the trier of

fact and are not subject to review. *Id.* at 266. Circumstantial and direct evidence are equally reliable. *Id.*

    2.    Second Degree Burglary

The elements of second degree burglary are (1) entering or remaining unlawfully in a building other than a vehicle or a dwelling, and (2) doing so with intent to commit a crime against a person or property therein. RCW 9A.52.030(1). RCW 9A.52.010(2) defines the phrase "[e]nters or remains unlawfully" as "[a] person 'enters or remains unlawfully' in or upon premises when he or she is not then licensed, invited, or otherwise privileged to so enter or remain."

Lyons argues that the State failed to produce sufficient evidence that he entered or remained in a building. He claims that the evidence at trial only established that he was present in the area surrounding B&M, and no physical evidence or eyewitness testimony placed him inside the building.

However, the State produced direct evidence that Lyons entered the B&M building. Mauermann testified that he saw a print inside B&M that appeared to be consistent with Lyons's shoe. He used a photograph of Lyons's shoes to make a positive identification. The State also introduced Lyons's shoes into evidence and had Mauermann describe distinct aspects of the tread that he used in tracking Lyons's shoe prints.

In addition, the State produced circumstantial evidence from which the jury could infer that Lyons entered B&M. Mauermann found Lyons's shoe prints "in between some of the vehicles" outside of the building. 2 RP at 205. The door to B&M appeared to be damaged and slightly ajar, and Mauermann identified two sets of shoe prints belonging to Emery and Lyons in

close proximity to the door. Further, a number of items had been moved inside the B&M building.

Viewing this evidence in the light most favorable to the State, we hold that the evidence was sufficient for a reasonable jury to find beyond a reasonable doubt that Lyons entered or remained in the B&M building. Accordingly, we hold that there was sufficient evidence to support Lyons's conviction of second degree burglary.[2]

3.    Attempted First Degree Theft and Attempted Theft of a Motor Vehicle

RCW 9A.56.020(1)(a) defines "theft" as "[t]o wrongfully obtain or exert unauthorized control over the property or services of another or the value thereof, with intent to deprive him or her of such property or services." First degree theft involves theft of property or services exceeding $5,000 in value. RCW 9A.56.030(1)(a). And under RCW 9A.56.065(1), "[a] person is guilty of theft of a motor vehicle if he or she commits theft of a motor vehicle." Attempt is defined under RCW 9A.28.020(1), which provides: "A person is guilty of an attempt to commit a crime if, with intent to commit a specific crime, he or she does any act which is a substantial step toward the commission of that crime."

Lyons claims that the evidence showed only that he was present when Emery committed the crime of theft. He points out that he had no items in his possession when he was arrested.

However, the State produced direct and circumstantial evidence from which a jury could infer that Lyons exercised unauthorized control over property in the building exceeding $5,000 as well a motor vehicle. As noted above, a number of items had been moved around inside

---

[2] Lyons also argues that there was insufficient evidence to convict him of being an accomplice to Emery's crime of second degree burglary. Because there is sufficient evidence to support Lyons's conviction as a principal regarding this crime, we need not address accomplice liability.

B&M.  Two shop trucks and a forklift had been moved, and the key fob to one of the trucks had been removed.  A large oxygen tank had been put in the back of one truck.  A blue toolbox weighing approximately 2,000 pounds had also been moved.  The owner of B&M testified that it would probably take a couple of people to move either the tank or the toolbox.  And other items had been moved around and placed in the back of the trucks.

We hold that there was sufficient evidence to support Lyons's convictions of attempted first degree theft and attempted theft of a motor vehicle.[3]

B.      ALLEGED PROSECUTORIAL MISCONDUCT

Lyons argues that the prosecutor committed misconduct in his closing argument when he argued that Lyons drove Emery in the truck found near the scene of the crimes and implied that Lyons owned the truck.  Lyons claims that these facts were not in evidence.  We disagree.

1.    Legal Principles

To prevail on a claim of prosecutorial misconduct, a defendant must show that in the context of the record and all of the circumstances of the trial, the prosecutor's conduct was both improper and prejudicial.  *State v. Thorgerson*, 172 Wn.2d 438, 442, 258 P.3d 43 (2011).  A prosecutor commits misconduct during oral argument by arguing facts not in evidence.  *See In re Pers. Restraint of Glasmann*, 175 Wn.2d 696, 705, 286 P.3d 673 (2012).  However, during closing argument the prosecutor is given wide latitude to assert reasonable inferences from the evidence.  *State v. Lewis*, 156 Wn. App. 230, 240, 233 P.3d 891 (2010).

---

[3] Lyons also argues that there was insufficient evidence to convict him of being an accomplice to Emery's crimes.  Because there is sufficient evidence to support Lyons's convictions as a principal regarding these crimes, we need not address accomplice liability.

Here, Lyons did not object to the challenged statements. When the defendant fails to object to the challenged portions of the prosecutor's argument, he or she is deemed to have waived any error unless the prosecutor's misconduct was so flagrant and ill-intentioned that an instruction could not have cured the resulting prejudice. *State v. Emery*, 174 Wn.2d 741, 760–61, 278 P.3d 653 (2012).

2.    Analysis

Lyons asserts that the prosecutor improperly argued that Lyons drove the pickup truck located near the scene of the crimes. But the evidence supports an inference that Lyons drove the truck. Mauermann testified that he found Lyons's driver's license on the driver's side top visor above the driver's seat. He also found a black latex glove on the driver's side floor, which was the same kind of glove Lyons was wearing on one hand when he was apprehended. And two sets of footprints in the snow led from the truck to B&M, where Lyons's footprints were found. We conclude that the prosecutor's argument that Lyons drove the truck was not improper.

Lyons also asserts that the prosecutor improperly argued that the pickup truck belonged to Lyons when there was no evidence of ownership. Lyons bases his claim on the following statement: "And they searched *his* truck, found Mr. Lyons's driver's license, showing he was actually in that vehicle." 3 RP at 358 (emphasis added). But the prosecutor did not argue that Lyons owned the truck. The reference to "his" truck is consistent with the argument that Lyons was driving the truck. The same evidence supporting the inference that Lyons drove the truck supports an inference that the truck was "his."

Finally, Lyons states without explanation that the prosecutor attempted to bolster the credibility of witnesses with facts not in evidence. To the extent that this statement refers to

9

some additional comments by the prosecutor not referenced above, we do not consider this

statement because Lyons provides no cite to the record on this issue. RAP 10.3(a)(6); *State v.*

*Reeder*, 181 Wn. App. 897, 910 n.15, 330 P.3d 786 (2014).

We reject Lyons's prosecutorial misconduct claim.

C.      ADMISSION OF BOLT CUTTERS

Lyons assigns error to the trial court's admission of the bolt cutters found in the bed of

the pickup truck located near the scene of the crimes because they were relevant only to the

Dietrich Trucking charge that ultimately was dismissed and were not relevant to the B&M

charges. But Lyons's real argument is that once the Dietrich Trucking charge was dismissed, the

bolt cutters became ER 404(b) bad acts evidence regarding the B&M charges and the trial court

should have ordered a mistrial. We reject both arguments.

First, Lyons does not argue that the bolt cutters were inadmissible *at the time they were*

*offered into evidence*, before the Dietrich Trucking charge had been dismissed. Specifically, he

does not challenge the trial court's ruling that the evidence was relevant in part because a lock

had been cut at Dietrich Trucking. And that ruling was correct – the bolt cutters were relevant to

show how Lyons entered Dietrich Trucking by unlawful means.[4] Therefore, we hold that the

trial court did not err in making its evidentiary ruling.

Second, Lyons now argues that the trial court should have ordered a mistrial once the

Dietrich Trucking charge was dismissed because *at that point* the bolt cutters became ER 404(b)

---

[4] Lyons states without discussion that the bolt cutters were highly prejudicial, and later cites ER
403. But he did not argue in the trial court that the bolt cutters should have been excluded under
ER 403. Therefore, he waived this argument. *State v. Scherf*, 192 Wn.2d 350, 387, 429 P.3d
776 (2018).

bad act evidence with regard to the B&M charges.  But Lyons did not move for a mistrial in the trial court.  Nor did he move to strike the evidence that was relevant only to the Dietrich Trucking charge or ask for a limiting instruction.

Lyons seems to suggest that the trial court had an obligation to order a mistrial sua sponte once the Dietrich Trucking charge was dismissed.  But he cites no authority for the proposition that a trial court automatically must order a mistrial on the remaining charges following dismissal of a charge after evidence has been submitted on that charge.

We hold that the trial court did not err in admitting the bolt cutters or in failing to order a mistrial sua sponte once the Dietrich Trucking charge was dismissed.

D.    INEFFECTIVE ASSISTANCE OF COUNSEL

Lyons argues that he received ineffective assistance of counsel because his defense counsel failed to move for a mistrial after the trial court dismissed the charge against him for attempted burglary of Dietrich Logging.  We disagree.

The Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution guarantee criminal defendants the right to effective assistance of counsel.  *State v. Estes*, 188 Wn.2d 450, 457, 395 P.3d 1045 (2017).  We review ineffective assistance of counsel claims de novo.  *Id*.

To prevail on an ineffective assistance of counsel claim, the defendant must show both that (1) defense counsel's representation was deficient, and (2) the deficient representation prejudiced the defendant.  *Id*. at 457-58.  Representation is deficient if, after considering all the circumstances, it falls below an objective standard of reasonableness.  *Id*. at 458.  Prejudice exists if there is a reasonable probability that except for counsel's errors, the result of the proceeding would have differed.  *Id*.  Reasonable probability in this context means a probability

sufficient to undermine confidence in the outcome. *Id*. If the alleged ineffective assistance of counsel is defense counsel's failure to file a motion, a defendant must show that the trial court would have granted the motion. *See State v. Emery*, 174 Wn.2d 741, 755, 278 P.3d 653 (2012).

Here, Lyons fails to show that the trial court would have granted a motion for a mistrial. "The court should grant a mistrial 'only when the defendant has been so prejudiced that nothing short of a new trial can insure that the defendant will be tried fairly.' " *State v. Wade*, 186 Wn. App. 749, 773, 346 P.3d 838 (2015) (quoting *State v. Mak*, 105 Wn.2d 692, 701, 718 P.2d 407 (1986)). Lyons has cited no authority for the proposition that a trial court should order a mistrial on the remaining charges following dismissal of a charge after evidence has been submitted on that charge. Further, admission of the bolt cutters was not so prejudicial to the B&M charges that the trial court would have no choice but to order a mistrial once the Dietrich Trucking charge was dismissed.

We hold that Lyons did not establish ineffective assistance of counsel.

E. IMPOSITION OF LFOS AND INTEREST ACCRUAL PROVISION

Lyons argues that under the 2018 amendments to the LFO statutes, we should strike the criminal filing fee, DNA collection fee, and interest accrual provision imposed in his judgment and sentence. The State concedes that Lyons is indigent and that the criminal filing fee and interest accrual provision should be stricken, but argues that imposition of the DNA collection fee was proper. We agree with the State.

In 2018, the legislature amended (1) RCW 36.18.020(2)(h), which now prohibits imposition of the criminal filing fee on a defendant who is indigent as defined in RCW 10.101.010(3)(a)-(c); (2) RCW 43.43.7541, which establishes that the DNA collection fee no longer is mandatory if the offender's DNA previously had been collected because of a prior

conviction; and (3) RCW 10.82.090, which now states that no interest will accrue on nonrestitution LFOs after June 7, 2018, and that the trial court shall waive nonrestitution interest that had accrued before June 7, 2018. RCW 10.82.090(1), (2)(a). These amendments apply prospectively to cases pending on direct appeal. *State v. Ramirez*, 191 Wn.2d 732, 749-50, 426 P.3d 714 (2018).

At sentencing, the trial court found Lyons to be indigent. Therefore, we accept the State's concession and agree that the criminal filing fee should be stricken. In addition, the interest accrual provision regarding nonrestitution LFOs must be stricken under existing law.

Lyons also argues that his DNA collection fee must be stricken because his DNA was collected before trial in this case as the result of multiple felony convictions in Oregon. However, RCW 43.43.7541 provides that a DNA collection fee is mandatory "unless *the state* has previously collected the offender's DNA as a result of a prior conviction." The term "the state" plainly refers to the state of Washington, not any state. The record does not reflect that Lyons had a previous felony conviction in Washington, and therefore there is no indication that the State previously had collected his DNA. Therefore, we affirm the imposition of the DNA collection fee.

We remand for the trial court to strike the criminal filing fee and interest accrual provision for nonrestitution LFOs, but affirm the imposition of the DNA collection fee.

CONCLUSION

We affirm Lyons's convictions, but we remand for the trial court to strike the criminal filing fee and interest accrual provision for nonrestitution LFOs from the judgment and sentence.

13

No. 52231-4-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
MAXA, C.J.

We concur:

_____
LEE, J.

_____
MELNICK, J.

14