# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 48409-9-II |
| Respondent, | |
| v. | |
| RORY LEE MICKENS, | UNPUBLISHED OPINION |
| Appellant. | |

MELNICK, J. — Rory Lee Mickens appeals his convictions for two counts of unlawful delivery of methamphetamine and two counts of unlawful possession of methamphetamine and heroin. Mickens consented to allow a judge pro tempore to hear his case and now contests that the judge pro tempore did not have jurisdiction. Mickens also contends that the prosecutor committed misconduct, that he received ineffective assistance of counsel, and that the trial court incorrectly instructed the jury and violated his time for trial right. Lastly, Mickens challenges the sufficiency of the evidence for all of his convictions. He asks that we not impose appellate costs. We affirm Mickens's convictions.

## FACTS

A.C., a confidential informant, conducted controlled buys for the Cowlitz-Wahkiakum County Task Force for thirteen years in exchange for money. A.C. occasionally stayed at Mickens's house. In June 2015, while in jail, A.C. told police that he could buy drugs from Mickens.

On July 14, A.C. met with Kelso Police Officer Jeffery Brown to conduct a buy. Brown searched A.C., did not find any money or drugs, and gave him money to buy the drugs. Brown and Detective Kimberly Moore surveilled A.C. as he walked to Mickens's house, and Sergeant Kimber Yund observed A.C. enter. A.C. purchased forty dollars' worth of methamphetamine. Mickens pulled a straw with methamphetamine in it from his backpack and gave it to A.C. A.C. exited the house, met Brown, and gave him the methamphetamine. Brown searched A.C. again and did not find anything on him.

On July 21, A.C. conducted a second buy from Mickens. This buy was similar to the previous one. Mickens provided A.C. with a bag of methamphetamine that he pulled from his backpack. A.C. left the house, met Brown, and gave him the methamphetamine. Brown searched A.C. again and did not find anything on him.

After the buys, Brown obtained a search warrant for Mickens's house. While executing the search warrant, Moore observed Mickens in the hallway holding a crowbar. Moore repeatedly told Mickens to put it down. Mickens eventually complied. The officers detained Mickens. Brown searched the detached garage and a room added onto the structure. The door to the room had a glass window with the name "Rory" written on it. C Report of Proceedings (RP) at 34. Brown found a spoon with heroin, drug paraphernalia, including a scale with methamphetamine on it, and a $20 bill.

The State charged Mickens with two counts of delivering methamphetamine and two counts of possession: one for methamphetamine and one for heroin.[1]

---

[1] RCW 69.50.401(1), (2)(b); RCW 69.50.4013(1).

## I.     CONTINUANCE MOTION

The State moved to continue the case.[2]  The State argued good cause existed because one of the police officers involved in the case had a scheduled vacation and Mickens's counsel had another trial that day.  The State also noted that the time for trial did not expire until October 12, and the court could reset the case within the time for trial.  Mickens's attorney stated that "in any event, even if I weren't in trial, I would not be prepared for my client's trial next week because we haven't had adequate time to prepare after receiving the [confidential informant] packet."  RP (Sept. 17, 2015) at 4.

The trial court found good cause and granted the motion because Mickens's attorney was in trial on another matter, Mickens only recently received the confidential informant packet, and the police officer was not available for the scheduled trial date.  The trial court set the new trial date for November 9.

## II.     APPOINTMENT OF JUDGE PRO TEMPORE

Judge James Stonier signed a written oath to serve as a judge pro tempore in Cowlitz County.  The superior court entered an order approving Stonier to "sit as a Judge Pro Tem pursuant to RCW 2.28.180, in such cases as the Court may direct and the parties may approve."  Clerk's Papers (CP) at 67.

Thereafter, the State and Mickens signed an agreement for Stonier to serve as judge pro tempore on the case.  The lawyers for the parties and Mickens personally also agreed to the appointment.

---

[2] The actual motion is not included in the clerk's papers.

III.    TRIAL

On the first day of trial, the State informed the trial court that it had only just located A.C. Because somebody had threatened A.C., the police moved him out of state to protect him. The State advised that Mickens could interview A.C. before trial. Mickens's attorney stated that he felt comfortable interviewing A.C. at that time or during an extended lunch break. He interviewed A.C. over the lunch break.

A.    CROWBAR EVIDENCE

In opening statements, the prosecutor stated "out of the corner of her eye [Moore] sees [Mickens] come out and he's holding a crow bar in his hand up in a—up above his head like this (Counsel demonstrates). She's ordered him to . . . drop it, he's not dropping it, there's sort of a, you know, continued commands to drop the crow bar. Eventually he puts it down and he's detained." RP (Nov. 12, 2015) at 5-6. Mickens did not object.

To avoid recalling Brown in his case, Mickens called Brown out of order, before the State rested. Although the State had elicited no testimony about the crowbar incident, Mickens asked Brown whether he knew that Moore came into contact with a person with a crowbar. Brown confirmed that in his report he listed Jesse Wilson as the person holding the crow bar. On cross-examination, Brown admitted that he made a mistake and typed the wrong name into his report. He said that Moore had told him Mickens possessed the crowbar.

The State resumed its case by calling Moore, and Mickens moved to exclude evidence of the crowbar. Outside the presence of the jury, the trial court stated, "if it had been raised before . . . the jury now has it in front of them, who had the crow bar. I understand why you did that . . . but it's now in front of them. I would probably have excluded it entirely under [ER] 403 because

it is highly prejudicial." C RP at 138. The trial court did allow the State to ask Moore who held the crowbar, but not whether it was held in a threatening manner.

B.    OTHER EVIDENCE

The parties stipulated that the plastic straw and the plastic bag contained methamphetamine.

Dustin Bailey testified that while in jail, A.C. told him that he could get out of jail if he worked with a police task force. Bailey testified that A.C. told him that he set up Mickens. A.C. denied telling Bailey that he set up Mickens.

C.    JURY INSTRUCTIONS

The trial court instructed the jury on reasonable doubt using the WPIC 4.01[3] instruction. Neither party excepted to this instruction.

D.    CLOSING ARGUMENT

In closing argument, Mickens challenged A.C.'s credibility and argued that nothing corroborated A.C.'s testimony. In rebuttal closing argument, the prosecutor stated,

> Now, [Mickens] argues the police didn't trust [A.C]. They never testified they didn't trust [A.C]. And to the contrary, if he worked as a confidential informant for the police for thirteen years, he must've been pretty reliable. But they go through their processes to try to make sure they can present the evidence in case, but they can't do things that put people in danger, and it would've been dangerous to put a wire on [A.C.] in this situation and that's why [Brown] didn't do it. Because someone finds out about the wire, and he testified to it, there's going to be problems for that person, which helps you out in understanding why there's just simply no way that this is what—that—that [A.C.] was telling [Bailey] in the jail that he was working for Task Force and he should, too. No way. Not in the jail, not in that environment. Just like you wouldn't want to be found out in the house.

D RP at 216-17. Mickens did not object.

---

[3] 11 WASHINGTON PRACTICE: WASHINGTON PATTER JURY INSTRUCTIONS: CRIMINAL 4.01, at 85 (3d ed. 2008) (WPIC).

The jury found Mickens guilty on all counts. Mickens appeals.

ANALYSIS

I.      JUDGE PRO TEMPORE

Mickens argues that the trial court lacked jurisdiction to try his case because Judge Stonier did not execute an oath to fairly try his case after a proper appointment. He further argues that the record does not show that Judge Stonier was specifically appointed to try Mickens's case. Finally, Mickens argues generally that the consent of the parties is necessary but insufficient to confer jurisdiction upon a judge pro tempore. We disagree.

A.      LEGAL PRINCIPLES

The requirement that the parties consent to a judge pro tempore is jurisdictional. *State v. Belgarde*, 119 Wn.2d 711, 718, 837 P.2d 599 (1992). Jurisdictional issues are reviewed de novo. *State v. Squally*, 132 Wn.2d 333, 340, 937 P.2d 1069 (1997). We also review issues of constitutional and statutory interpretation de novo. *State v. Elmore*, 154 Wn. App. 885, 904-05, 228 P.3d 760 (2010).

"'When interpreting a constitutional provision, we seek to ascertain and give effect to the manifest purpose for which it was adopted.'" *State v. Barton*, 181 Wn.2d 148, 155, 331 P.3d 50 (2014) (quoting *Westerman v. Cary*, 125 Wn.2d 277, 288, 892 P.2d 1067 (1994)). We "first look to the plain language of the text 'and will accord it its reasonable interpretation'" and the words will be given their ordinary meaning. *Barton*, 181 Wn.2d at 155 (quoting *Wash. WaterJet Workers Ass'n v. Yarbrough*, 151 Wn.2d 470, 477, 90 P.3d 42 (2004)).

B.     THE TRIAL COURT HAD JURISDICTION

Members of the bar association may preside over trials in superior court as judges pro tempore when "agreed upon in writing by the parties litigant or their attorneys of record, and is approved by the court and sworn to try the case." WASH. CONST. art. IV, § 7; RCW 2.08.180; *In re Dependency of K.N.J.*, 171 Wn.2d 568, 578, 257 P.3d 522 (2011).  Thus, the express language allows the parties' attorneys to consent to trial by a judge pro tempore and thereby confer jurisdiction on the judge pro tempore. *State v. Osloond*, 60 Wn. App. 584, 586, 805 P.2d 263 (1991).

RCW 2.08.180 requires that a judge pro tempore take an oath to faithfully discharge the duties of the office to the best of his or her ability.  A judge pro tempore is appointed to hear one particular case. *Nat'l Bank of Wash., Coffman-Dobson Branch v. McCrillis*, 15 Wn.2d 345, 357, 130 P.2d 901 (1942).  "The essential element to the valid appointment of a judge pro tempore is the consent of the parties." *State v. McNairy*, 20 Wn. App. 438, 440, 580 P.2d 650 (1978).  "It may be conceded that the failure of a judge pro tem to take the oath of office *will not* render his acts void, at least where the parties appear and do not make seasonable objection." *McCrillis*, 15 Wn.2d at 356 (emphasis added).  A judge pro tempore lacks jurisdiction to preside over a case absent the consent of the parties. *Belgarde*, 119 Wn.2d at 718.

Here, Judge Stonier took an oath to faithfully discharge the duties of the office.  The order on his appointment stated, "It is ordered that JAMES J. STONIER is approved by the Court to sit as a Judge Pro Tem pursuant to RCW 2.28. 180, in such cases as the Court may direct and the parties may approve." CP at 67.

7

The parties' lawyers signed an agreement allowing Judge Stonier hear the case as judge pro tempore. In addition, they and Mickens orally consented to the appointment. Therefore, we conclude that the trial court had jurisdiction to hear the case.

## II. PROSECUTORIAL MISCONDUCT

Mickens argues that the prosecutor committed misconduct in rebuttal closing argument because he vouched for A.C.'s credibility as an informant. We disagree.

### A. STANDARD OF REVIEW

"Prosecutorial misconduct may deprive a defendant of his constitutional right to a fair trial." *In re Pers. Restraint of Glasmann*, 175 Wn.2d 696, 703-04, 286 P.3d 673 (2012). An appellant claiming prosecutorial misconduct must demonstrate that the prosecutor's conduct was both improper and prejudicial. *State v. Emery*, 174 Wn.2d 741, 759-61, 278 P.3d 653 (2012).

But when the defendant failed to object to the improper comments at trial, the defendant must also show that the comments were "so flagrant and ill intentioned that an instruction could not have cured the resulting prejudice." *Emery*, 174 Wn.2d at 760-61. The appellant must show that no curative instruction would have eliminated the prejudicial effect and the misconduct resulted in prejudice that had a substantial likelihood of affecting the verdict. *Emery*, 174 Wn.2d at 761. The focus of this inquiry is more on whether the resulting prejudice could have been cured, rather than the flagrant or ill-intentioned nature of the remarks.

### B. THE PROSECUTOR DID NOT COMMIT MISCONDUCT

"Improper vouching occurs when the prosecutor expresses a personal belief in the veracity of a witness or indicates that evidence not presented at trial supports the testimony of a witness." *State v. Thorgerson*, 172 Wn.2d 438, 443, 258 P.3d 43 (2011). "Whether a witness testifies truthfully is an issue entirely within the province of the trier of fact." *Thorgerson*, 172 Wn.2d at

443. "'It is misconduct for a prosecutor to state a personal belief as to the credibility of a witness.'" *State v. Ish*, 170 Wn.2d 189, 196, 241 P.3d 389 (2010) (quoting *State v. Warren*, 165 Wn.2d 17, 30, 195 P.3d 940 (2008)).

However, "a prosecutor has wide latitude in closing argument to draw reasonable inferences from the evidence and may freely comment on witness credibility based on the evidence." *State v. Lewis*, 156 Wn. App. 230, 240, 233 P.3d 891 (2010). "This is especially so where . . . the prosecutor is rebutting an issue the defendant raised in his closing argument." *Lewis*, 156 Wn. App. at 240.

Some statements, standing alone, may sound like an expression of a personal opinion by the prosecutor. *State v. McKenzie*, 157 Wn.2d 44, 53, 134 P.3d 221 (2006). However, when considered within "'the total argument, the issues in the case, the evidence discussed during the argument, and the court's instructions, it is usually apparent that counsel is trying to convince the jury of certain ultimate facts and conclusions to be drawn from the evidence.'" *McKenzie*, 157 Wn.2d at 53-54 (quoting *State v. Papadopoulos*, 34 Wn. App. 397, 400, 662 P.2d 59 (1983)). "'Prejudicial error does not occur until such time as it is clear and unmistakable that counsel is not arguing an inference from the evidence, but is expressing a personal opinion.'" *McKenzie*, 157 Wn.2d at 54 (quoting *Papadopoulos*, 34 Wn. App. at 400) (emphasis omitted). "'In other words, there is a distinction between the individual opinion of the prosecuting attorney, as an independent fact, and an opinion based upon or deduced from the testimony in the case.'" *McKenzie*, 157 Wn.2d at 53 (quoting *State v. Armstrong*, 37 Wash. 51, 54-55, 79 P. 490 (1905)) (emphasis omitted).

Mickens did not object to the statement, and thus, he must show that the comments were "so flagrant and ill intentioned that an instruction could not have cured the resulting prejudice." *Emery*, 174 Wn.2d at 760-61.

In closing argument, Mickens challenged A.C.'s credibility and argued that none of A.C.'s testimony was corroborated by evidence. The prosecutor then made the following rebuttal argument which Mickens now challenges: "[Mickens] argues the police didn't trust [A.C]. They never testified they didn't trust [A.C]. And to the contrary, if he worked as a confidential informant for the police for thirteen years, he must've been pretty reliable." D RP at 216-17.

Nothing in this statement personally endorsed A.C. as a witness. The prosecutor rebutted Mickens's challenge to A.C.'s credibility. The prosecutor argued a reasonable inference from the evidence that if A.C. was not reliable, the task force would not have continued to work with him. The prosecutor simply argued inferences from the evidence at trial and did not commit misconduct. Therefore, we conclude that the prosecutor did not vouch for A.C., and Mickens's argument to the contrary fails.

III.    INEFFECTIVE ASSISTANCE OF COUNSEL

Mickens argues that he received ineffective assistance of counsel because his attorney both failed to move to exclude testimony that depicted Mickens as violent because he held a crowbar and failed to object to the prosecutor's vouching for A.C. in closing argument. We disagree.

A.    STANDARD OF REVIEW

We review claims of ineffective assistance of counsel de novo. *State v. Sutherby*, 165 Wn.2d 870, 883, 204 P.3d 916 (2009). To prevail on a claim of ineffective assistance of counsel, the defendant must show both (1) that defense counsel's representation was deficient, and (2) that the deficient representation prejudiced the defendant. *State v. Grier*, 171 Wn.2d 17, 32-33, 246

P.3d 1260 (2011) (applying *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)). Representation is deficient if after considering all the circumstances, the performance falls below an objective standard of reasonableness. *Grier*, 171 Wn.2d at 33. Prejudice exists if there is a reasonable probability that except for counsel's errors, the result of the proceeding would have differed. *Grier*, 171 Wn.2d at 34.

An appellant faces a strong presumption that counsel's representation was effective. *Grier*, 171 Wn.2d at 33. Legitimate trial strategy or tactics cannot serve as the basis for a claim of ineffective assistance of counsel. *State v. Kyllo*, 166 Wn.2d 856, 863, 215 P.3d 177 (2009). "Conversely, a criminal defendant can rebut the presumption of reasonable performance by demonstrating that 'there is no conceivable legitimate tactic explaining counsel's performance.'" *Grier*, 171 Wn.2d at 33 (quoting *State v. Reichenbach*, 153 Wn.2d 126, 130, 101 P.3d 80 (2004)). The defense counsel's strategic decisions must be reasonable. *Grier*, 171 Wn.2d at 34.

B. FAILURE TO MOVE TO EXCLUDE TESTIMONY ON CROWBAR

To prevail on a claim that counsel's performance was deficient by failing to make a motion, a party must show that the trial court would have granted it. *See State v. Brown*, 159 Wn. App. 366, 371, 245 P.3d 776 (2011) (counsel has no duty to pursue strategies that reasonably appear unlikely to succeed). Yet, "'[w]hen counsel's conduct can be characterized as legitimate trial strategy or tactics, performance is not deficient.'" *In re Pers. Restraint of Caldellis*, 187 Wn.2d 127, 141, 385 P.3d 135 (2016) (quoting *Kyllo*, 166 Wn.2d at 863). "A criminal defendant can rebut the presumption of reasonable performance by demonstrating that 'there is no conceivable legitimate tactic explaining counsel's performance.'" *Caldellis*, 187 Wn.2d at 141 (quoting *Reichenbach*, 153 Wn.2d at 130). Yet not all strategies or tactics are immune from attack. *Caldellis*, 187 Wn.2d at 141. "'The relevant question is not whether counsel's choices were

strategic, but whether they were reasonable.'" *Grier*, 171 Wn.2d at 34 (quoting *Roe v. Flores-Ortega*, 528 U.S. 470, 481, 120 S. Ct. 1029, 145 L. Ed. 2d 985 (2000)). Though "the deficient performance inquiry does not permit us to decide what we believe would have been the ideal strategy and then declare an attorney's performance deficient for failing to follow that strategy." *State v. Carson*, 184 Wn.2d 207, 220, 357 P.3d 1064 (2015).

We determine whether Mickens's attorney made a legitimate strategic decision to not move in limine to exclude the evidence of the crowbar to use the evidence to attempt to impeach Brown's testimony. That his strategy of impeachment opened the door to the crowbar testimony and may not have been the best choice given the court's statement after Mickens's attorney's attempt to exclude further evidence is a matter of hindsight. The trial court even noted that it understood why Mickens's attorney questioned the officer on the crowbar. We conclude that Mickens's attorney attempted to pursue a legitimate strategy by impeaching the main officer on the case.

Therefore, we conclude that Mickens received effective assistance of counsel because a legitimate trial strategy existed for not moving to exclude the crowbar evidence.

C.     FAILURE TO OBJECT TO PROSECUTOR'S VOUCHING FOR A.C. IN CLOSING ARGUMENT

Where a defendant bases his ineffective assistance of counsel claim on trial counsel's failure to object, the defendant must show that the objection would likely have succeeded. *State v. Gerdts*, 136 Wn. App. 720, 727, 150 P.3d 627 (2007). Because we previously concluded that that the prosecutor did not vouch for A.C. and did not commit misconduct, we also conclude that Mickens fails to show his attorney was deficient by not objecting. Mickens's argument on this point fails.

IV.     REASONABLE DOUBT INSTRUCTION

Mickens argues that the trial court erred by instructing the jury on reasonable doubt because the instruction improperly focused the jury on a search for "the truth."  Br. of Appellant at 15.

We have repeatedly rejected this argument and do so again.  *State v. Jenson*, 194 Wn. App. 900, 902, 378 P.3d 270, *review denied*, 186 Wn.2d 1026 (2016).  The trial court did not err by instructing the jury on reasonable doubt.

V.      APPELLATE COSTS

Mickens opposes appellate costs in light of *State v. Sinclair*, 192 Wn. App. 380, 367 P.3d 612, *review denied*, 185 Wn.2d 1034 (2016), asserting that he does not have the ability to pay because he is indigent.  We decline to address the issue.  A commissioner of this court will consider whether to award appellate costs in due course under the newly revised provisions of RAP 14.2 if the State decides to file a cost bill and if Mickens objects to that cost bill.

STATEMENT OF ADDITIONAL GROUNDS

I.      VAGUE CLAIMS

Mickens asserts a large number of issues that are too vague for us to consider.  Mickens provides no argument to support these alleged errors and little context to assist our review.  He asserts that it was error to exclude a page of an exhibit, but it is unclear what exhibit or why it was error.  Mickens asserts that he lost a witness.  He also asserts that his due process rights were violated and that because the trial court allowed the prosecutor to ask "who had the crow bar," it violated his right to a fair trial but does not explain why.  SAG at 6.

Mickens claims that the prosecutor used "staged" testimony to introduce inadmissible evidence through Brown.  SAG at 2.  He asserts that the prosecutor also misstated the promise of testimony that was not delivered, but it is unclear to what he refers.  Mickens asserts that the

13

prosecutor expressed a personal opinion about his guilt or credibility, but does not identify a statement, and the prosecutor made credibility statements about defense witnesses. He asserts the prosecutor spoke about a tablet found in the room that proves the room was not his room. He also asserts that the prosecutor stated facts not in evidence, but provides no explanation. Finally, he quotes a number of sections of the prosecutor's closing argument, but why he claims the statements were improper is unclear. Mickens also asserts that the prosecutor asked for sympathy for Brown in closing argument.

Mickens asserts that dismissal was warranted because of arbitrary action or governmental misconduct, without identifying any issue. He asserts that the prosecutor did not disclose a report of a law enforcement agency that contradicted the government's key witness, but did not provide any details. Mickens quotes portions of the record without an identification of error. He included a photocopy of GR 33 without any explanation. He wrote about what constitutes ER 404B evidence and the policy behind the rule.

Mickens asserts a number of claims that he received ineffective assistance of counsel. First, he asserts that he received ineffective assistance because his attorney interviewed A.C. during the lunch hour, but does not identify why that was insufficient. He asserts that his attorney should have objected to the prosecutor's tactics, but does not specify which. Mickens also generally claims that he received ineffective assistance by quoting the record but does not explain what constituted the ineffective assistance.

Although RAP 10.10 does not require an appellant to refer to the record or cite authority, he is required to inform us of the "nature and occurrence of the alleged errors." These assertions of error are too vague to allow us to identify the issues and we do not reach them because Mickens fails to cite to the record or authority.

## II.    OUTSIDE THE RECORD

In addition, Mickens makes several assertions that depend on matters outside the record. Mickens seems to assert that his attorney was unable to effectively prepare for cross-examination. He also asserts that he received ineffective assistance because his attorney did not investigate a defense. Mickens asserts that his attorney failed to investigate information he told him and worked for his conviction. He questions whether A.C. was actually out of state or unavailable before the first day of trial. All of these claims pertain to matters outside the record. On direct appeal, we cannot consider matters outside the record. *State v. Curtiss*, 161 Wn. App. 673, 703, 250 P.3d 496 (2011) (citing *State v. McFarland*, 127 Wn.2d 322, 338 n.5, 899 P.2d 1251 (1995) ("a personal restraint petition is the appropriate means of having the reviewing court consider matters outside the record")). Therefore, we do not consider these issues.

## III.    ADDRESSED IN DIRECT APPEAL

Mickens also asserts issues addressed in the direct appeal. Mickens asserts that the prosecutor committed misconduct because he vouched for the State's informant, A.C., in closing argument. He quotes the same statement challenged by his appellate attorney, addressed in the direct appeal. He also challenges the relevance of the crow bar testimony, which is discussed above. These issues are addressed above and we need not consider them further.

## IV.    MERITLESS CLAIMS

Finally, Mickens makes a number of assertions that are without merit. Mickens asserts that the trial court erred by admitting evidence that he held a crowbar when the officers entered the house while executing the search warrant because it was irrelevant and prejudicial. However, Mickens's attorney only moved to exclude the evidence after he had already opened the door to the evidence on cross-examination, and thus, this assertion is without merit. He also asserts that

the trial court failed to instruct the jury not to consider the evidence. Mickens did not request this instruction.

Mickens also asserts that the trial court erred by instructing that it needed to be unanimous to find Mickens guilty because no special verdict was required. This assertion is without merit because jury verdicts in criminal cases must be unanimous as to the defendant's guilt of the crime charged. *State v. Ortega–Martinez*, 124 Wn.2d 702, 707, 881 P.2d 231 (1994); WASH. CONST. art. 1, § 21. Mickens also asserts that Officer Epperson's testimony was a violation of ER 403 and 404(b). Officer Epperson did not testify, and thus, this assertion is without merit. Mickens even acknowledged that he did not testify.

Further, Mickens seems to assert that the State committed a *Brady*[4] violation because the State was unable to find A.C. until trial began. Mickens also asserts that the prosecutor made a statement in closing argument requiring personal experience or expert knowledge by discussing A.C.'s prior convictions. Mickens asserts that the prosecutor made "false or misleading testimony" in closing argument by stating A.C. did not live in the house. SAG at 16. This assertion is without merit because A.C. testified that he did not live there. Mickens also asserts some statements by the prosecutor were improper, including a statement about the crowbar, but because the statements were objected to and sustained by the trial court, these assertions do not have merit.

Mickens also asserts a number of ineffective assistance of counsel-related assertions that are without merit. He asserts that he received ineffective assistance of counsel because his attorney did not strike a juror that said she "could" be impartial, not that she "would" be impartial, and counsel used jurors that were not impartial. SAG at 34. However, this assertion is not supported by the record. He also asserts that he received ineffective assistance of counsel because his

---

[4] *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963).

attorney did not object to the use of Officer Epperson's testimony. As stated above and as acknowledged by Mickens in his SAG, Epperson did not testify, and thus, this assertion is without merit. He further asserts that he received ineffective assistance of counsel because his counsel's cross-examination bolstered a witness's credibility. Finally, Mickens asserts that the prosecutor and his attorney staged testimony to introduce inadmissible evidence. Accordingly, we do not consider these assertions because they are without merit.

V.      TIME FOR TRIAL

Mickens seems to assert that the trial court violated his time for trial right when it granted the State's motion to continue because good cause did not exist when his attorney had another trial and the officer who was not available at the time of the motion did not ultimately testify at trial. We disagree.

A.      STANDARD OF REVIEW

We review an alleged violation of the time for trial rule de novo. *State v. Kenyon*, 167 Wn.2d 130, 135, 216 P.3d 1024 (2009). We interpret court rules in the same manner that it interprets legislatively drafted statutes. *State v. Farnsworth*, 133 Wn. App. 1, 11, 130 P.3d 389 (2006), *review granted*, 159 Wn.2d 1004, 151 P.3d 976 (2007). Statutory construction and interpretation are questions of law we review de novo. *Farnsworth*, 133 Wn. App. at 11. As with statutes, we must give effect to the plain meaning of a rule's language. *State v. Miller*, 188 Wn. App. 103, 106, 352 P.3d 236 (2015). "'Plain meaning is discerned from reading the rule as a whole, harmonizing its provisions, and using related rules to help identify the legislative intent embodied in the rule.'" *Miller*, 188 Wn. App. at 106 (quoting *State v. Chhom*, 162 Wn.2d 451, 458, 173 P.3d 234 (2007)).

17

B.      THE TRIAL COURT DID NOT ERR

Under CrR 3.3(b)(1)(i), a defendant held in custody pending trial must be tried within 60 days of arraignment. The trial court may grant an extension of time for trial when unavoidable or unforeseen circumstances exist. CrR 3.3(e)(8). The trial court may also grant a continuance on the written agreement of the parties, or on the motion of the court or a party when required in the administration of justice. CrR 3.3(f). A continuance is properly granted where the defendant will not be substantially prejudiced in the presentation of the defense. CrR 3.3(f). "'[U]navailability of counsel may constitute unforeseen or unavoidable circumstances to warrant a trial extension under CrR 3.3(d)(8).'" *State v. Williams*, 104 Wn. App. 516, 522, 17 P.3d 648 (2001) (quoting *State v. Carson*, 128 Wn.2d 805, 814, 912 P.2d 1016 (1996)). The trial court must "state on the record or in writing the reasons for the continuance." CrR 3.3(f)(2). Violation of the time for trial rule results in dismissal with prejudice. CrR 3.3(h).

Here, the trial court found good cause for a continuance and granted the motion on the bases that Mickens's attorney was going to be in trial on another matter, Mickens only recently received the confidential informant packet, and the police officer was not available for the scheduled trial date. These reasons constituted good cause for a continuance because Mickens's attorney was in trial on another matter and constituted an unavoidable circumstance. CrR 3.3(e)(8). It is irrelevant that the officer did not testify at trial. Therefore, we conclude that the trial court did not err by granting the continuance and setting the new trial date.

VI.     PROSECUTORIAL MISCONDUCT

Mickens asserts several issues of prosecutorial misconduct. He asserts that the prosecutor committed misconduct because he made false and misleading arguments in opening statements.

18

Mickens also asserts that the prosecutor gave his personal opinion and vouched for A.C.'s credibility in closing arguments. We disagree.

The same standard of review from the direct appeal applies here.

A.     OPENING STATEMENTS

Mickens asserts that the prosecutor's opening statement was improper because it contained remarks unsupported by the evidence. He seems to point to the prosecutor's statement referring to him holding a crowbar when the police officers executed the search warrant.

In his opening statement, the prosecutor stated that after Moore entered the house, she saw Mickens "come out and he's holding a crow bar in his hand up in a—up above his head like this (Counsel demonstrates). She's ordered him to put the—drop it, he's not dropping it, there's sort of a, you know, continued commands to drop the crow bar. Eventually he puts it down." RP (Nov. 12, 2015) at 5-6.

"During an opening statement, a prosecutor may state what the State's evidence is expected to show." *State v. Magers*, 164 Wn.2d 174, 191, 189 P.3d 126 (2008). "In context, this statement concerns a witness's expected testimony, a permissible subject for opening statements." *Thorgerson*, 172 Wn.2d at 444.

The prosecutor's statement was not improper because the trial court did not limit what evidence about the crowbar could come in. Later, the trial court limited the inquiry on the crowbar, but it was before Moore testified. Regardless, witnesses testified that Mickens held a crowbar when the officers entered the house. Accordingly, this statement was supported by the evidence, and we conclude that the statement was not improper and Mickens's claim fails.

B.      CLOSING ARGUMENTS

As stated above, "Improper vouching occurs when the prosecutor expresses a personal belief in the veracity of a witness or indicates that evidence not presented at trial supports the testimony of a witness." *Thorgerson*, 172 Wn.2d at 443. "Whether a witness testifies truthfully is an issue entirely within the province of the trier of fact." *Thorgerson*, 172 Wn.2d at 443. However, "a prosecutor has wide latitude in closing argument to draw reasonable inferences from the evidence and may freely comment on witness credibility based on the evidence." *Lewis*, 156 Wn. App. at 240. "This is especially so where . . . the prosecutor is rebutting an issue the defendant raised in his closing argument." *Lewis*, 156 Wn. App. at 240.

First, Mickens seems to assert that the prosecutor expressed his opinion on the credibility of a defense witness in closing argument. The prosecutor stated:

> On the other hand, we heard from [Bailey] here just a few minutes ago, and he says [A.C.] said in the jail, to him, that he should go work for the Task Force like he does and, you know, he made this whole thing up on [Mickens]. There's reasons to be skeptical of that, primarily the fact that he's been a confidential informant for thirteen years, and people in the jail don't want you to be a snitch. That's not gonna be a good thing to be in that world, and there's no way he's gonna want everyone in the jail to be hearing that he's working for the Task Force. And he—he was even asked about that while he was on the stand. No way.

C RP at 174.

We conclude that this statement does not constitute an opinion on Bailey's credibility. We look at the entire argument instead of viewing the highlighted snippets of argument out of context. *State v. Jackson*, 150 Wn. App. 877, 884, 209 P.3d 553 (2009). In context, after this statement, the prosecutor reminded the jury that it must examine the evidence and it will determine which version of events it believed occurred. He then outlined which evidence, including reasonable inferences from the evidence, could support the jury's conclusion that A.C. was credible and Bailey was not. This is not vouching. *Jackson*, 150 Wn. App. at 885. Moreover, Mickens did not

20

object to the argument, and the comments do not rise to the level of flagrant and ill-intentioned misconduct. *Jackson*, 150 Wn. App. at 885.

Next, Mickens seems to assert that the prosecutor vouched for A.C. on a few occasions in closing argument. He challenges when the prosecutor stated:

> He was obviously doing his best to remember an event from a while back, but it—no big conversation, and that makes sense, because if a person is gonna go do something like this that's dangerous and doesn't want to be found out, the person in the middle of that is probably not interested in making a lot of other conversations and getting distracted on the way to taking care of business. He's only in the house for twenty to thirty minutes on both buys.

C RP at 176.

We again conclude that the prosecutor did not vouch for A.C. Mickens did not object to this statement. This statement constituted a reasonable inference from the evidence, and did not rise to the level of flagrant and ill-intentioned misconduct. *Jackson*, 150 Wn. App. at 885.

Mickens also challenges the prosecutor's statement that after A.C. received methamphetamine from Mickens, he "talks a little while more. He doesn't want to look like he's up to something." C RP at 178; *see* SAG at 10. Mickens did not object to this statement. This statement constituted a reasonable inference from the evidence and A.C.'s testimony. *Jackson*, 150 Wn. App. at 885. We conclude that this statement was not improper.

Mickens also asserts that the prosecutor stated his personal opinion when he stated, "if that didn't happen at all you don't even waste a lot of time talking whether he knew it or not." SAG at 12. However, in context, when discussing the elements of the crime of delivery of a controlled substance, the prosecutor stated, "If [A.C.] gives [Mickens] the money and he gave him the methamphetamine, clearly [Mickens] knew. If that didn't happen at all, you don't even waste a lot of time talking whether he knew it or not if it didn't happen at all." C RP at 181. Mickens did not object to the statement. Clearly, in context, the prosecutor discussed the elements of the crime:

21

that if the jury did not find one element, it need not spend time on the others. This statement did

not constitute a personal opinion by the prosecutor.

Mickens asserts that the prosecutor vouched for A.C. when the prosecutor stated:

> There's some degree of inconsistency with the first buy. . . . But people don't always remember everything perfectly, and in a situation like that he's going—he's making the buy and the evidence he comes out with is that he succeeded in that.
> When we have the—well, the amount of time he was in there on the buys is not exceptionally long, and the Detective never said, oh, he was in there for a much longer time than normal. This—keep in mind he's been doing it for thirteen years, he knows what he's doing at this point and he's being careful. He's not just gonna run in there and do something to make it obvious that he's working for Task Force. He's gonna take it easy, go in there, talk to people, get to what he needs to do, get the item, and come out. And to spend twenty to thirty minutes doing that is not unrealistic.

D RP at 218-19.

Again, we conclude that these statements did not constitute vouching for A.C. Mickens

did not object to this statement. The prosecutor stated reasonable inferences from the testimony

at trial to explain weaknesses in A.C.'s testimony. *Jackson*, 150 Wn. App. at 885. In addition, the

statements did not rise to the level of flagrant and ill-intentioned misconduct. *Jackson*, 150 Wn.

App. at 885.

Next, Mickens asserts that the prosecutor vouched for A.C. when he stated:

> You know, this thing about him telling [Bailey] in the jail, that's just really, really difficult to believe because he doesn't—it's not like [Bailey] is some close friend to him. He hasn't given any indication of that in how he testified. And then this guy who has been undercover—or confidential informant for thirteen years is just gonna go blabbin' about it to this guy in the jail, who he sort of met in the jail when he could be assaulted or whatever else by the people in the jail once they find out? No way he's gonna do that.
> But Defense argument that: Well, how do we know he didn't just blab it to everybody? Well, he wouldn't have done that. Sure, you could do something, but would he have done that? Thirteen years doing this, it's both dangerous and a way he makes money and he can't do it if people know. And now he's out.

D RP at 221.[5]

Again, we conclude that these statements did not constitute vouching for A.C. Mickens did not object to this statement. The prosecutor stated reasonable inferences from the testimony at trial to explain weaknesses in A.C.'s testimony. *Jackson*, 150 Wn. App. at 885. The jury could reasonably infer that A.C. would not have told others about his work as an informant because it would put himself at risk. In addition, the statements did not rise to the level of flagrant and ill-intentioned misconduct. *Jackson*, 150 Wn. App. at 885.

Furthermore, Mickens asserts that the prosecutor stated his personal opinion when he countered Mickens's attorney's argument on how much the drugs cost when purchased by A.C. The prosecutor stated:

> Now, [Mickens] does this analysis based on the fact that at times, apparently, some amounts of drugs have been sold on this ten dollars for the rough amount that ended up being weighed. A couple things about that. Number one, [Brown] didn't say that that was an absolute rule, that's always the purchase price; number two, and you can all consider your recollection of it, but on the second buy it was forty dollars, on the first, I'm not sure that's what was testified to, so you'll have to remember what you heard in court.

D RP at 219-220. Mickens did not object to this statement. This was not a personal opinion; it was a statement based on the evidence. In addition, the prosecutor highlighted inferences from the testimony on the cost of the drugs in question. Finally, the statements did not rise to the level of flagrant and ill-intentioned misconduct. *Jackson*, 150 Wn. App. at 885.

Therefore, we conclude that the prosecutor did not commit misconduct in opening statements or closing arguments.

---

[5] Mickens also asserts that the second paragraph "bashes" the defense argument. SAG at 17. This assertion is without merit because the prosecutor merely stated the defense's theory presented in its closing argument. Accordingly, we do not consider the issue further.

VII. INEFFECTIVE ASSISTANCE OF COUNSEL

Mickens seems to assert the he received ineffective assistance of counsel because his attorney failed to move to exclude A.C. under CrR 4.7 or for a mistrial when A.C. finally became available on the day trial was to begin. We disagree.

The same standard of review from the direct appeal applies here.

A. FAILURE TO MOVE TO EXCLUDE A.C.

To prevail on a claim that counsel's performance was deficient by failing to file a motion, a party must show that the trial court would have granted the motion. *Brown*, 159 Wn. App. at 371. Yet, "[w]hen counsel's conduct can be characterized as legitimate trial strategy or tactics, performance is not deficient." *Caldellis*, 187 Wn.2d at 141 (internal quotation omitted).

CrR 4.7(a) governs the prosecutor's obligations during discovery. Under that rule, "[t]he prosecuting attorney shall disclose to the defendant any expert witnesses whom the prosecuting attorney will call at the hearing or trial, the subject of their testimony, and any reports they have submitted to the prosecuting attorney." CrR 4.7(a)(2)(ii). The prosecutor's duty to disclose is a continuing one, but "limited to material and information within the knowledge, possession or control of members of the prosecuting attorney's staff." CrR 4.7(4).

Here, the State made efforts to find the informant, A.C., who had been disclosed, but was unable to find him. A.C. had been threatened and the police moved him out of the state. The judge gave a deadline for interviews with A.C. for November 9. On the morning of trial, the State informed Mickens's attorney that it had access to the informant.

Because the State did not have A.C. under its control, and did not know his location, and it had disclosed A.C.'s identity to Mickens's attorney, the State did not violate CrR 4.7.

24

Accordingly, the trial court would have denied any motion made by Mickens's attorney, and Mickens's claim fails.

### B. FAILURE TO MOVE FOR A MISTRIAL

In the event of a discovery violation, the trial court "may order such party to permit the discovery of material and information not previously disclosed, grant a continuance, dismiss the action or enter such other order as it deems just under the circumstances." CrR 4.7(h)(7)(i). Ordering a mistrial is one of the "other orders" available to the trial court. *State v. Greiff*, 141 Wn.2d 910, 923 n.5, 10 P.3d 390 (2000). But the court should grant a mistrial "only when the defendant has been so prejudiced that nothing short of a new trial can insure that the defendant will be tried fairly." *Greiff*, 141 Wn.2d at 921 (quoting *State v. Johnson*, 124 Wn.2d 57, 76, 873 P.2d 514 (1994)).

For the same reasons discussed in the previous section, because the State did not violate CrR 4.7, the trial court would not have granted a motion for a mistrial. Regardless, Mickens was not so prejudiced that only a new trial would insure he was tried fairly. The court provided time for Mickens's attorney to interview A.C. before trial began. Accordingly, Mickens's assertion fails.

## VIII. SUFFICIENCY OF THE EVIDENCE

Mickens asserts insufficient evidence supports his convictions, but does not specify which. We disagree.

### A. STANDARD OF REVIEW

To determine whether sufficient evidence supports a conviction, we view the evidence in the light most favorable to the State and determines whether any rational fact finder could have found the elements of the crime beyond a reasonable doubt. *State v. Engel*, 166 Wn.2d 572, 576,

210 P.3d 1007 (2009). "Substantial evidence is evidence sufficient to persuade a fair-minded person of the truth of the asserted premise." *State v. Homan*, 181 Wn.2d 102, 106, 330 P.3d 182 (2014).

"In claiming insufficient evidence, the defendant necessarily admits the truth of the State's evidence and all reasonable inferences that can be drawn from it." *State v. Drum*, 168 Wn.2d 23, 35, 225 P.3d 237 (2010). Any inferences "'must be drawn in favor of the State and interpreted most strongly against the defendant.'" *Homan*, 181 Wn.2d at 106 (quoting *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992)). In addition, we "must defer to the trier of fact for purposes of resolving conflicting testimony and evaluating the persuasiveness of the evidence." *Homan*, 181 Wn.2d at 106.

B.    DELIVERIES

First, we consider whether sufficient evidence supports Mickens's two convictions of unlawful manufacturing, delivering and/or possession of methamphetamine with intent to deliver (counts I and II).

To convict Mickens of unlawful delivery of methamphetamine, the State must prove that knowingly delivered a controlled substance, methamphetamine. RCW 69.50.401(1).

Taken in the light most favorable to the State, on July 14, A.C. entered Mickens's house, and he purchased forty dollars' worth of methamphetamine. Mickens gave A.C. the methamphetamine inside a straw. On July 21, A.C. purchased a bag of methamphetamine from Mickens. A rational jury could find that Mickens unlawfully delivered methamphetamine in the straw and in the bag to A.C., and thus, sufficient evidence supports his conviction on both counts.

C. POSSESSIONS

Next, we consider whether sufficient evidence supports Mickens's two convictions of unlawful possession, one of methamphetamine (count III) and one of heroin (count IV).

To convict Mickens of unlawful possession of methamphetamine and heroin, the State must prove only "the nature of the substance and the fact of possession." *State v. Bradshaw*, 152 Wn.2d 528, 538, 98 P.3d 1190 (2004) (referring to the unlawful possession statute as the "mere possession" statute); *see* RCW 69.50.4013. There is no minimum amount of a controlled substance that the State must present to sustain a conviction for unlawful possession of that controlled substance. *State v. Malone*, 72 Wn. App. 429, 439, 864 P.2d 990 (1994).

"Possession can be actual or constructive." *State v. Hathaway*, 161 Wn. App. 634, 646, 251 P.3d 253 (2011). Actual possession occurs when a defendant has physical custody of the item, and constructive possession occurs if the defendant has dominion and control over the item. *State v. Jones*, 146 Wn.2d 328, 333, 45 P.3d 1062 (2002). Constructive possession is established when "the defendant was in dominion and control of either the drugs or the premises on which the drugs were found." *State v. Callahan*, 77 Wn.2d 27, 30-31, 459 P.2d 400 (1969). "Dominion and control means that "the object may be reduced to actual possession immediately." *Jones*, 146 Wn.2d at 333. "If a person has dominion and control over the premises, there is a rebuttable presumption that the person also has dominion and control over items on the premises." *State v. Summers*, 107 Wn. App. 373, 384, 28 P.3d 780, 43 P.3d 526 (2001). We consider the totality of the circumstances in determining whether the defendant has such dominion and control. *State v. Cote*, 123 Wn. App. 546, 549, 96 P.3d 410 (2004).

Taken in the light most favorable to the State, while executing the search warrant, the officers searched a room that had been added to the exterior garage, which had a glass window

27

with the name "Rory" written on it. C RP at 34. Inside the room with Mickens's name on the door, Brown found a spoon with a "tar-like substance," drug paraphernalia including a scale with white residue, and a $20 bill. C RP at 36. The substance on the spoon tested as heroin. The substance on the scale tested as methamphetamine. A rational jury could find that Mickens unlawfully possessed methamphetamine and heroin because he had dominion and control over his room, and thus, sufficient evidence supports his conviction on each count.

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Melnick, J.

We concur:

_____
Johanson, P.J.

_____
Sutton, J.