IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 34776-1-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| LONNIE LEE PRZESPOLEWSKI, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

FEARING, C.J. — Lonnie Przespolewski appeals from a conviction of unlawful

possession of a firearm. He asks us to reverse his conviction on the basis of prosecutorial

misconduct. He requests that we overturn his sentence within the standard range because

of comments by the sentencing court. He solicits us to remand the case to the trial court

to conduct an individualized inquiry as to his ability to pay legal financial obligations.

We deny Przespolewski his first two requests, but grant his last request.

FACTS

On June 25, 2016, Lonnie Przespolewski drove his mother's Nissan Rogue to

Town Nissan, a local car dealership in East Wenatchee, to be serviced. An issue at trial

was whether Przespolewski knowingly possessed a gun located inside the Rogue. Our

facts focus on trial testimony relevant to this issue. These facts provide a context under which the prosecutor and the trial court uttered their respective comments that Przespolewski challenges on appeal.

David Ward, Przespolewski's stepfather, testified that weeks before June 25, 2016, he placed a Raven .25 caliber firearm in the Nissan Rogue's glovebox. Ward deposited the gun in his wife's car two weeks before Przespolewski came to live at the Wards' home. We do not know how long Przespolewski lived with his stepfather and mother before June 25. Przespolewski had recently been released from incarceration. Stepfather Ward further testified that Przespolewski was not present when he placed the gun in the glovebox. Przespolewski testified that he knew not of the presence of the gun in the car.

When Lonnie Przespolewski arrived at the Town Nissan dealership, on the morning of June 25, the dealership service manager informed Przespolewski that the service department lacked an opening for an appointment until noon. Accordingly, Przespolewski crossed the street to the Town Ford dealership to ask for an earlier appointment. Town Ford also could not service the car until noon. Kristy Taylor, a Town Ford salesman, then noticed Przespolewski perusing cars in the Ford dealership lot. She deemed him fidgety because he quickly moved from one car to another. Przespolewski spent forty-five minutes looking at Town Ford vehicles for sale.

While still awaiting a noon appointment, Lonnie Przespolewski visited a residence located next door to Town Ford and inquired about trailers advertised for sale in the front

2

yard. The trailer owners offered Przespolewski camper sleepers for free if he paid to transfer title. Przespolewski returned to Town Ford to ask about using a pickup truck to transport the campers to a friend's house. Salesperson Kristy Taylor directed him to Sergio Avila Morales, another salesperson. Taylor, however, now concerned about Przespolewski's behavior, texted her friend, East Wenatchee Police Sergeant James Marshall and asked Marshall whether she should worry about Przespolewski.

Sergio Avila Morales showed Lonnie Przespolewski a flatbed truck. When Avila and Przespolewski walked toward the flatbed truck, Avila observed Przespolewski carrying a wallet with an object in its middle. Avila suspected the object to be a gun. Avila lacked concern about the gun because Przespolewski stated he served in the military and deployed two days earlier. Avila assumed Przespolewski held a permit for the firearm.

Lonnie Przespolewski testified that he retrieved a shirt from the glovebox of his mother's vehicle to take with him on a test drive of the truck. According to Przespolewski, a gun was then inside his shirt, although he insisted that he lacked knowledge of the presence of the gun. He did not explain how the gun entered the inside of his shirt. As he entered the passenger side of the flatbed truck, Przespolewski threw the shirt onto the seat. Avila entered the driver's side and the two gentlemen spoke for three minutes. While inside the truck, Przespolewski told Avila: "[T]ake my car, I'll take the truck." Report Proceedings (RP) at 87. Avila concluded that Przespolewski wanted

3

to trade the Nissan Rogue for the flatbed truck.

As Lonnie Przespolewski and Sergio Avila Morales talked in the flatbed truck, Przespolewski noticed Kristy Taylor photographing the Nissan Rogue and its license plate. Przespolewski exited the truck and accosted Taylor. Przespolewski testified that, as he departed the truck, he grabbed his shirt, which likely still enfolded the gun. Avila testified that Przespolewski left his wallet, with a gun therein, on the truck's seat. Avila saw a silver, semi-automatic, .25 caliber weapon.

Lonnie Przespolewski confronted Kristy Taylor. Taylor insisted to Przespolewski that she did not photograph the license, but, at trial, Taylor testified that she texted the license number to Sergeant James Marshall. Przespolewski entered the Nissan Rogue as Taylor stood near. Sergio Avila Morales, carrying Przespolewski's wallet and the unacknowledged gun, joined Taylor and Przespolewski at the Nissan Rogue. According to Avila, he remarked to Przespolewski, "[H]ey, you forgot this," as he rested the gun on the Rogue's passenger seat. RP at 80. According to Avila, Przespolewski moved the gun to the side of the seat.

Kristy Taylor testified that she saw Sergio Avila carrying a wallet with a gun's silver barrel protruding from the wallet as Avila approached Lonnie Przespolewski and her. According to Taylor, Avila told Przespolewski, "[H]ere's your gun, sir. You forgot it in the car." RP at 65. Przespolewski replied: "[T]hanks, man." RP at 66.

Przespolewski testified contrary to Kristy Taylor and Sergio Avila. Przespolewski

4

declared that although Avila placed something on the seat through the passenger window, he did not notice any gun.

Kristy Taylor went inside the dealership as Przespolewski and Avila continued to speak. Taylor asked the sales manager to page Avila, because she wanted Avila to leave Przespolewski's proximity since Przespolewski possessed a gun. Taylor also updated Sergeant James Marshall that the disquieting man possessed a weapon.

Lonnie Przespolewski left the Ford Nissan dealership in the Nissan Rogue and retrieved his wife, Renee Michelle Przespolewski, at the Valley Mall Parkway. Przespolewski testified that his wife moved items from the front seat of the Rogue to the back seat to make more room in which to sit. Przespolewski then first noticed a gun wrapped in the shirt.

East Wenatchee Sergeant James Marshall responded to Kristy Taylor's text messages. When Sergeant Marshall learned of the firearm possession, he searched the ownership of the car through its license plate. He recognized the vehicle and Lonnie Przespolewski's association to the vehicle. Marshall knew Przespolewski. Sergeant Marshall inquired and learned that Przespolewski was currently under Department of Corrections' supervision, which prohibited him from possessing firearms. Marshall notified the Douglas County Sheriff's Office of Przespolewski's possession of a gun since the Town Ford building was outside East Wenatchee city limits. An off-duty Douglas County deputy visited Town Ford to interview Kristy Taylor and Sergio Avila

Morales.

In the meantime, Sergeant James Marshall and other law enforcement officers searched for Lonnie Przespolewski. After perusing Przespolewski's residence and the Town Nissan lot, Sergeant Marshall parked near the Town Nissan lot. Przespolewski drove past Marshall in the Nissan Rogue. Marshall noticed the car and recognized Przespolewski. Marshall directed Przespolewski to park in the Town Nissan dealership lot. Marshall arrested Przespolewski for driving with a revoked driver's license. Marshall noted, during the arrest, that Przespolewski fidgeted, rambled, and sweated.

Sergeant James Marshall testified at trial that after the arrest, Lonnie Przespolewski commented that his father's gun lay in the back seat of the car. Marshall averred that Przespolewski asked him not to retrieve the gun because the retrieval would "lock [him] up." RP at 98. According to Marshall, Przespolewski, on the trip to jail, claimed he needed the firearm to protect his son after a recent altercation when others attacked the son in an alley. Przespolewski countered in his testimony that he did not recall making the statements to Marshall and that he never intended to possess a firearm. Marshall procured a search warrant to comb the Nissan Rogue. Marshall found the firearm in the back of the vehicle, the location purportedly identified by Przespolewski.

After his arrival in jail, Lonnie Przespolewski telephoned his mother on a recorded line. Przespolewski told his mother:

6

I wasn't brandishing that firearm at that time either. I wasn't raising it, didn't have it swinging around or doing nothing wrong. That's what I'm pissed off about. That fucking lady had no reason to fucking call the cops on me in the first place. She was around my own fucking car and I got pissed off because I seen her fucking taking pictures of the license plate. I didn't even pick that fucking gun up out of the fucking pick-up to bring it back to your car, he did.

RP at 152.

## PROCEDURE

The State of Washington charged Lonnie Przespolewski with unlawful possession of a firearm in the second degree and driving while license suspended or revoked in the first degree. Przespolewski conceded guilt to the driving while license revoked charge, but asked the jury to acquit him of unlawful possession of a firearm. Przespolewski stipulated to the fact that he had previously been convicted of a felony. He argued he never knowingly possessed the gun.

In rebuttal closing argument, the prosecutor stated, in part:

Ladies and gentlemen, frankly, the Defendant's story is pretty much—well, there's not really words for it other than it's a complete lie. First, you have to take into fact that the Defendant where he testified—one, his testimony has a number of crimes of dishonesty which considerably factor and weigh on his credibility of both felony convictions—Taking a Motor Vehicle Without Permission in the 2nd Degree, Theft in the 2nd Degree, two counts of Possession of Stolen Property in the 2nd Degree, a Theft in the 3rd Degree. We need to take all those criminal convictions into account when you're weighing his credibility. But you really don't need those prior convictions to determine that everything, pretty much everything the Defendant said up on the stand was a lie.
Essentially, Defendant's argument is still difficult to grasp how, how he could make this right, but that—his argument is that unbeknownst to

7

him, he grabbed his shirt out of the glovebox and just happened to pick up a firearm without knowing it. You should be allowed to take back the gun that was admitted into evidence and you should be allowed to feel the gun, feel how heavy it is. This gun is certainly not light. So, the fact that he's saying that he just picked up a shirt and oop[s], I didn't know there was a gun in there when I picked the shirt up. It's just, it's just not realistic.

The Defendant's completely—and the other, the other thing that you need to consider when you're discussing is that he completely contradicts every single other witness that you heard today. It's shocking that every other person who sees the Defendant knows the Defendant was running around with a firearm. Kristy Taylor is concerned. I was scared he had a gun. Let's get Sergio back in here. I don't think he's safe out there. Sergio Avila knows he's got a gun, he's like, yeah, I was just returned the guy's wallet and gun to him. Officer Marshall knows he's got a gun because the Defendant admits to Officer Marshall that he has a gun in the vehicle and that he was just taking it out because he didn't want to leave it in the vehicle. And finally, the Defendant himself again and finally admits that he was possessing a gun on that audio call.

So, the Defendant's entire defense and the entire testimony should be completely disregarded. And again, I would ask that you find the Defendant guilty of both of these charges. Thank you.

RP at 175-77.

The jury found Lonnie Przespolewski guilty of unlawful possession of a firearm in the second degree and driving while license suspended or revoked in the first degree. The standard sentencing range for unlawful possession of a firearm is fifty-one to sixty months, and the range for driving with a suspended or revoked license is ninety to three hundred and sixty-four days. Przespolewski requested a sentence at the low end of the range. The court sentenced him to a mid-range sentence of fifty-five months for unlawful possession, and ninety days' confinement for driving with license suspended with the sentences to run concurrently. At the sentencing hearing, the court remarked:

8

Mr. Przespolewski, I just don't understand all of it, to be honest with you. I mean, you're, you're pleasant enough in Court and I understand that you're not overly pleasant to your mother sometimes from the telephone calls, but you're pleasant enough in Court. I mean, this is just silly. This is absolutely silly. And I hate sending you back to prison since that's something that's so silly for almost five years. It's just absolutely amazing to me. And I also can't believe and it's amazing to me that you went to trial and to a 3.5 Hearing on circumstances where you had no chance. And I'm assuming that your attorney told you had no chance, but you took [twelve] people out of (indiscernible) and missed their job because they had to come up here and you had no defense. I don't understand your thought process.

RP at 186.

During the sentencing hearing, the court asked Lonnie Przespolewski how much he could afford to pay in legal financial obligations on release from prison.

Przespolewski responded:

I'm disabled. I've just got my SSI settlement and I—$25.00, a month, I'll shoot for that right now.

RP at 187. The trial court ordered $2,115.10 in legal financial obligations as follows:

| | |
|---|---|
| $500.00 | Victim assessment |
| $200.00 | Criminal filing fee |
| $65.10 | Witness costs |
| $250.00 | Jury demand fee |
| $400.00 | Fees for court appointed attorney |
| $500.00 | Fine under RCW 9A.20.021 |
| $100.00 | Deoxyribonucleic acid (DNA) collection fee |
| $100.00 | Collection fee |

9

The judgment and sentence read that Przespolewski must pay not less than $25 per month beginning immediately. Przespolewski did not object to any imposition of financial obligations.

## LAW AND ANALYSIS

On appeal, Lonnie Przespolewski requests that we reverse his conviction and remand for a new trial due to prejudice resulting from the prosecutor commenting on his credibility as a witness. Alternatively, Przespolewski requests we remand for resentencing because the trial court rejected Przespolewski's sentencing request on the impermissible basis that he exercised his constitutional right to a jury trial. Lastly, Przespolewski requests this court strike all discretionary legal financial obligations because he lacks the current or likely future ability to pay such costs. We review each contention in turn.

### Prosecutor Comments

Lonnie Przespolewski argues that the prosecution engaged in misconduct during rebuttal closing argument when the prosecutor purportedly personally opined as to the lack of Przespolewski's credibility. The State counters that the prosecutor permissibly commented on the evidence rather than uttering an expression of opinion. We agree with the State.

An appellate court reviews allegations of prosecutorial misconduct under an abuse of discretion standard. *State v. Lindsay*, 180 Wn.2d 423, 430, 326 P.3d 125 (2014); *State*

*v. Brett*, 126 Wn.2d 136, 174-75, 892 P.2d 29 (1995). A defendant alleging prosecutorial misconduct bears the burden of demonstrating that the conduct was both improper and prejudicial. *State v. Lindsay*, 180 Wn.2d at 430. Prejudice is established only if there is a substantial likelihood that the instances of misconduct affected the jury's verdict. *State v. Magers*, 164 Wn.2d 174, 191, 189 P.3d 126 (2008). We conclude the prosecuting attorney's conduct to be acceptable and do not address any alleged prejudice.

Lonnie Przespolewski argues that the prosecutor committed misconduct by expressing his personal opinion as to Przespolewski's credibility. The prosecuting attorney should not express a personal opinion as to the credibility of a witness or the guilt of a defendant. *State v. Lindsay*, 180 Wn.2d at 437. This conduct violates the advocate-witness rule, which prohibits attorneys from appearing as both a witness and an advocate in the same litigation. *State v. Lindsay*, 180 Wn.2d at 437. Nevertheless, prosecutors have wide latitude in closing argument to draw reasonable inferences from the evidence and may freely comment on witness credibility based on the evidence. *State v. Lewis*, 156 Wn. App. 230, 240, 233 P.3d 891 (2010). This latitude more strongly applies when the prosecutor rebuts an issue the defendant raised in his closing argument. *State v. Lewis*, 156 Wn. App. at 240. Unless it is clear that the prosecutor did not argue an inference from the evidence, the prosecutor's closing argument does not constitute improper vouching for or devouching of a witness. *State v. Lewis*, 156 Wn. App. at 240.

Lonnie Przespolewski rests his misconduct claim on the first sentence of the

11

prosecutor's rebuttal closing argument to the jury which stated:

> Ladies and gentlemen, frankly, the Defendant's story is pretty much—well, there's not really words for it other than it's a complete lie.

RP at 175-76. Nevertheless, the prosecuting attorney did not couch his sentence as a personal opinion. More importantly, Przespolewski disregards the prosecutor's subsequent statements in which he discredits Przespolewski's testimony by emphasizing evidence contradicting Przespolewski's argument. The prosecutor asked the jury to consider, when weighing Przespolewski's credibility: (1) Przespolewski's history of crimes of dishonesty, (2) the unlikelihood of the veracity of Przespolewski's testimony that he unknowingly grabbed a shirt, containing a heavy gun inside, from the Nissan glovebox, (3) Kristy Taylor's and Sergio Avila's testimony that Przespolewski possessed a gun, (4) Sergeant James Marshall's testimony that Przespolewski conceded having a gun in the vehicle, and (5) Przespolewski's admission on the jail phone call of possessing a gun. After reviewing these pieces of evidence and inferences therefrom, the prosecutor asked the jury to disregard Przespolewski's testimony and defense.

In a related argument, Lonnie Przespolewski contends he never experienced the opportunity to present his defense theory to an untainted jury since the prosecutor personally opined on his credibility and guilt. Nevertheless, a prosecuting attorney may even call a defendant a liar if the prosecuting attorney ties the accusation with evidence that challenges the defendant's story. *State v. Copeland*, 130 Wn.2d 244, 291, 922 P.2d

12

1304 (1996); *State v. Adams*, 76 Wn.2d 650, 660, 458 P.2d 558 (1969), *rev'd on other grounds by*, 403 U.S. 947, 91 S. Ct. 2273, 29 L. Ed. 2d 855 (1971). Przespolewski's prosecutor never labeled him a liar. Instead, the prosecuting attorney characterized Przespolewski's story as a lie. As previously noted, the State's counsel supported the comment by evidence and inferences drawn from the evidence that Przespolewski's account of the events was not credible because it conflicted with the testimony of all other witnesses.

## Trial Court Comments

Lonnie Przespolewski challenges his standard range sentence by contending the sentencing judge penalized him for exercising his constitutional right to a jury trial. According to Przespolewski, the trial court abused its discretion by rejecting his request for a low-end standard range sentence on this impermissible basis. We disagree.

The trial court sentenced Lonnie Przespolewski to a mid-range sentence of fifty-five months on count one and ninety days on count two with the sentences running concurrently. A defendant cannot appeal a standard range sentence unless the error presents an issue of constitutional magnitude or is otherwise contrary to the law. *State v. Sandefer*, 79 Wn. App. 178, 180-81, 900 P.2d 1132 (1995). A sentencing court's punishment of a defendant for exercising his right to a trial instead of accepting a plea bargain constitutes an error of constitutional magnitude that may be appealed. *State v. Sandefer*, 79 Wn. App. at 181. When a decision to impose costs is based solely on a

13

defendant's exercise of his right to go to trial, reversal of the order is appropriate. *State v. Richardson*, 105 Wn. App. 19, 22, 19 P.3d 431 (2001).

Przespolewski emphasizes this excerpt from the trial court's remarks during the sentencing hearing:

> It's just absolutely amazing to me. And I also can't believe and it's amazing to me that you went to trial and to a 3.5 Hearing on circumstances where you had no chance. And I'm assuming that your attorney told you had no chance, but you took twelve people out of (indiscernible) and missed their job because they had to come up here and you had no defense. I don't understand your thought process.

RP at 186. The State counters that Przespolewski uses the court's comments out of context. The State suggests that the trial court remarked on Przespolewski's thought process in committing the crime and the silliness of a career criminal possessing a firearm after recently leaving prison and being under supervision of the Department of Corrections. The judge expressed discontent that Przespolewski would return to prison for almost five years on such a charge.

To support his assignment of error, Lonnie Przespolewski reasons that his case resembles Herbert Richardson's case in *State v. Richardson*, 105 Wn. App. 19 (2001). Przespolewski's reliance on *Richardson*, however, is mistaken. In *State v. Richardson*, the trial court changed its mind regarding imposing costs and fees after learning that Richardson rejected the State's plea offer to plead guilty to a fourth degree assault charge prior to trial, the charge of which the jury convicted him. At sentencing, the trial court

14

initially stated that it would not impose costs. When changing its mind, the sentencing

court commented:

> Okay. I was asking . . . whether the state had made that offer. And the state had made that offer, so that means something to me.
> . . . .
> So under those circumstances I am imposing court costs.

105 Wn. App. at 21 (second alteration in original). The appellate court concluded that

the record showed that the trial court imposed costs only because Herbert Richardson

rejected the plea offer. In reversing the costs imposed by the trial court, the appellate

court distinguished the *Richardson* facts from those found in *State v. Sandefer*, 79 Wn.

App. 178 (1995).

In *State v. Sandefer*, the trial judge, during a sentencing hearing, commented that

he frequently, when sentencing within the standard range, conferred a defendant a lower

sentence if the defendant entered a plea of guilty. The judge explained that he did not

seek to be kind to the defendant but recognized that a guilty plea spares the parent and

child grief in a child molestation prosecution. Paul Sandefer challenged his high-end

standard range sentence by arguing that the judge's remarks indicated improper

consideration of his refusal to plead guilty. This court read the sentencing court's

remarks as nothing more than a fair response to Sandefer's objection to the State's

recommendation.

As in *Sandefer*, Lonnie Przespolewski's sentencing court commented on Przespolewski's decision to submit to a trial. Nevertheless, the remarks did not affirmatively indicate that the court considered Przespolewski's decision to go to trial when choosing a mid-range sentence rather than a low-end sentence. Taken in context, the remarks were not vindictive or punitive. The court observed that Przespolewski had "no chance" and "no defense." RP at 186. But the sentencing court did not indicate Przespolewski's decision influenced the sentence. Accordingly, we affirm Przespolewski's mid-range standard sentence.

## Legal Financial Obligations

Lonnie Przespolewski challenges the imposition of discretionary legal financial obligations because he lacks the present or future ability to pay. Przespolewski failed to object to the imposition of any legal financial obligations at sentencing. Nevertheless, he argues that he can still challenge the obligations for the first time on appeal, while citing RAP 2.5(a), *State v. Blazina*, 182 Wn.2d 827, 834-35, 344 P.3d 680 (2015). The State contends that Lonnie Przespolewski failed to preserve any error for review on appeal. The State also argues that the trial court committed no error because the court inquired into Przespolewski's ability to pay and Przespolewski volunteered an amount that he could pay.

Upon a conviction in superior court, the court may order the defendant to pay restitution, costs, fines, and other assessments labeled as legal financial obligations.

16

RCW 9.94A.760(1). The law distinguishes between discretionary and mandatory legal financial obligations. RCW 7.68.035, RCW 36.18.020(2)(h), and RCW 43.43.7541 respectively mandate that the court impose a victim assessment fee, a criminal case filing fee, and the DNA collection fee regardless of the defendant's ability to pay. The amount of these costs is $800. Trial courts must impose such fees regardless of a defendant's indigency. *State v. Lundy*, 176 Wn. App. 96, 102, 308 P.3d 755 (2013). Other legal financial obligations imposed by the trial court, besides restitution, are discretionary.

By statute, the court may not order a defendant to pay discretionary legal financial obligations unless the defendant possesses or will possess the financial ability to pay. RCW 10.01.160(3); *State v. Curry*, 118 Wn.2d 911, 914, 829 P.2d 166 (1992). RCW 10.01.160(3) proscribes:

> The court shall not order a defendant to pay costs unless the defendant is or will be able to pay them. In determining the amount and method of payment of costs, the court shall take account of the financial resources of the defendant and the nature of the burden that payment of costs will impose.

In *State v. Blazina*, 182 Wn.2d at 838 (2015), our Supreme Court clarified that RCW 10.01.160(3) requires the trial court to do more than sign a judgment and sentence with boilerplate language stating that it engaged in the required inquiry. Rather, the record must reflect that the trial court made an individualized inquiry into the defendant's current and future ability to pay. "'[T]he court shall take into account the financial resources of the defendant and the nature of the burden that payment of costs will

17

impose.'" *State v. Blazina*, 182 Wn.2d at 838 (quoting RCW 10.01.160(3)). "'[T]he court shall not order a defendant to pay costs unless the defendant is or will be able to pay them.'" *State v. Blazina*, 182 Wn.2d at 838 (quoting RCW 10.01.160(3)). If a defendant is found indigent, such as when his income falls below 125 percent of the federal poverty line or he receives need-based assistance such as Social Security, thereby automatically meeting the GR 34 standard of indigency, courts should seriously question that persons' ability to pay LFOs. *State v. Blazina*, 182 Wn.2d at 839; *City of Richland v. Wakefield*, 186 Wn.2d 596, 606-07, 380 P.3d 459 (2016).

This court must first decide whether to address this assignment of error since Lonnie Przespolewski did not object to the imposition of legal financial obligations at sentencing. RAP 2.5(a) provides, in relevant part: "The appellate court may refuse to review any claim of error which was not raised in the trial court." With regard to unpreserved challenges to financial obligations, our high court clarified: "A defendant who makes no objection to the imposition of discretionary [legal financial obligations] at sentencing is not automatically entitled to review." *State v. Blazina*, 182 Wn.2d at 832. "Each appellate court must make its own decision to accept discretionary review." *State v. Blazina*, 182 Wn.2d at 835. A majority of this court determines to exercise its discretion to grant review in this appeal because of the high amount of legal financial obligations imposed and because Przespolewski's only source of income may be Supplemental Security Income benefits.

18

The following colloquy occurred between Lonnie Przespolewski and the sentencing court:

> THE COURT: Yes. Mr. Przespolewski, how much can you afford to pay once you get out?
> MR. PRZESPOLEWSKI: I'm disabled. I've just got my SSI settlement and I—$25.00, a month, I'll shoot for that right now.
> THE COURT: You can afford to pay $25.00, a month? All right.

RP at 187. The court's inquiry ended there. The court then imposed $2,115.10 in financial obligations, $1,315.10 of which were discretionary. The discretionary financial obligations included a $65.10 witness fee, a $250.00 jury demand fee, a $400.00 court appointed attorney fee, a $500.00 fine under RCW 9A.20.021, and a $100.00 collection fee. The court directed Przespolewski to start making payments of not less than $25.00 per month immediately, not on release from incarceration.

Although the trial court did more than enter a boilerplate judgment and sentence, the court did not conduct an individualized inquiry into Lonnie Przespolewski's ability to pay presently or in the future. The inquiry did not address Przespolewski's individual circumstances or seek information about his financial assets, income, or debts. Even when Przespolewski informed the court he was disabled and recently received a settlement from the Social Security Administration, the court did not further its inquiry.

## CONCLUSION

We affirm Lonnie Przespolewski's judgment of guilt. We remand the case to the trial court to conduct an inquiry into Przespolewski's financial ability to pay legal

19

No. 34776-1-III
*State v. Przespolewski*

financial obligations now and in the future, including an inquiry as to whether his sole income is Social Security income. We otherwise affirm Przespolewski's sentence.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_Fearing, J._

Fearing, C.J.

WE CONCUR:

_Siddoway, J._

Siddoway, J.

_Lawrence-Berrey, J._

Lawrence-Berrey, J.

20